ALBANY,
Oct. 1825.

Ja:kson
v.
Seward.

---

JACKSON, *ex dem.* VAN WYCK, *against* SEWARD.

EJECTMENT, commenced in May, 1822, for a farm in Fishkill, Dutchess county, tried before BETTS, C. Judge, at the Dutchess circuit, July 7th, 1823.

The suit was brought against Philander Seward and William Seward, jointly ; the latter of whom died in July, 1822, and the suit was continued against the former, (the present defendant.)

A voluntary settlement, or conveyance by way of advancement of children, after marriage, by a person indebted at the time, is fraudulent and void against all his creditors, who were such prior to the settlement or advancement ; and that without regard to the amount of their debts, or the extent of the property settled, or the circumstances of the person who makes the settlement or advancement.

This rule applies to a debt due from a person as guarantor ; though it be contingent, till after the settlement or advancement ; and though it be such a debt at the time as could not be proved under an English commission of bankrupt, or under our insolvent acts.

But with regard to debts contracted subsequent to the settlement, or advancement, *it seems,* that the presumption of fraud, arising in law, may be repelled by circumstances.

A father, having guaranteed the payment of a certain judgment against S. who had lands bound by the judgment, which, at a fair value, might well be supposed sufficient to pay the judgment, then disposed of all his real estate, by giving to his son a full covenant deed, and taking a bond to himself for an annuity for his life ; and the son, also, in consideration of the deed, gave separate bonds to two of his sisters for their portions ; after which the property of S. was exhausted by execution, and proved insufficient to pay the judgment ; and the father was sued upon his guaranty, and had judgment against him, on execution upon which, the real estate, thus conveyed for the benefit of his children, was sold. On ejectment by the purchaser, though the jury found against all actual fraud ; yet *held*, that the advancement was fraudulent in law, and void as against the debt due by the guaranty.

*Reade* v. *Livingston,* (3 John. Ch. Rep. 481,) in equity, considered ; and its doctrine applied to a court of law.

On the trial, these facts appeared : On the 16th of April, 1818, William Seward, being aged and infirm, was seised in fee of the premises in question, being a valuable farm of more than 200 acres; and being so seised, by deed of bargain and sale, dated on that day, conveyed them to the defendant, his son, for the consideration *expressed* of $10,000, with full covenants.

The true consideration, however, was as follows : certain bonds from the defendant ; one to his sister, Rebecca Swartwout, for $2277 50 ; another to his sister, Electa Dodge, for $2175 ; both bearing even date with the deed, and payable six months after the death of his father William ; another in the penalty of $10,000, bearing the same date, to his father, conditioned to pay him an annuity of $500, in half yearly payments, on which were endorsed, in the father's hand-writing, the payment of these annuities, in April, of the years 1819, 20, 21 and 22.

The lessor of the plaintiff had, after the execution of this deed, recovered a judgment in this Court, against William Seward, the father, in an action tried at the Dutchess April Circuit, 1820, for $2980 04 damages and costs ; which was docketed September 13th, 1820. That action was commenced in August, 1819 : and was bottomed on a covenant of guaranty executed by William, the father, to the lessor of the plaintiff. This covenant was dated before the deed, viz. the 6th November, 1817 ; and guaranteed that a certain judgment in this Court of about $2700, against William Seward, junior, in favor of the father, and by him assigned to the lessor of the plaintiff, was collectable. Executions were kept running upon this judgment against William Seward junior's property, in different counties, till after the deed to the defendant, in this cause was executed ; and in February, 1819, and not before, the property of William Seward was exhausted. Evidence was also given that he had a large real estate situate in different counties, which might fairly be supposed sufficient to satisfy the judgment against him, until it was sold upon execution; on which property the judgment was a lien at the time of the assignment.

A *fi. fa.* having issued on the judgment against the father by virtue thereof, the premises in question were sold at auction, and conveyed to the lessor of the plaintiff on the 19th of February, 1820, by the sheriff of Dutchess.

ALBANY,
Oct. 1825

Jackson
v.
Seward.

Much evidence was given as to the good faith and honesty of the deed to the son; which was so strong in favor of the deed, that the counsel for the plaintiff declined going to the jury upon it.

A verdict was, therefore, taken for the plaintiff, subject to the opinion of this Court, upon the single question, whether the deed was fraudulent, in law, as against the lessor of the plaintiff.

*P. Ruggles*, for the plaintiff, now insisted (among other things.)

1. That the lessor of the plaintiff was a creditor within the statute against fraudulent conveyances. (1 R. L. 75, s. 2.) To which point he cited *Jackson* v. *Myers*, (18 John. 425,) and the cases there referred to.

2. That the deed was voluntary, fraudulent and void within that statute. (*Reade* v. *Livingston*, 3 John. Ch. Rep. 481, and the cases there cited.)

*J. Tallmadge*, contra, said that all actual fraud was negatived by the verdict. The deed to the defendant was not voluntary; and therefore was not fraudulent in law within the meaning of the cases. The obligation contracted by the grantee was indeed an adequate consideration. But there being perfect *bona fides* in fact, it is only necessary for the Court to see, that there was such a pecuniary consideration as would carry the use. One dollar would have been sufficient for this purpose. The inadequacy of consideration is merely evidence of fraud; not fraud *per se.*

But even if voluntary, the deed is not, for that reason, necessarily void. It may still be valid, even as to prior creditors. And the late Chancellor is not borne out, by his cases, in the strong dictum, that the legal presumption of fraud in such a conveyance cannot be repelled. (3 John. Ch. Rep. 500.) To show that the intent is always to be considered, the counsel cited Rob. Fraud. Conv. 190; 8 T. R. 530:

Shep. Touchs. 67 ; 6 East, 257 ; 2 Bl. Com. 297; 5 Ves. 384 ; 2 Atk. 600; 2 Br. Ch. Rep. 90 ; Newl. on Cont. 384-5; 5 Ves. 384 ; and Cowp. 432, 708.

But the debt against William Seward, senior, did not arise till after he conveyed to the defendant. The guaranty was conditional. Nothing was due upon it till the property of W. Seward, junior, was exhausted by execution, in February, 1819. The debt not being due from the father till this time, it is the same as if it had been contracted after the execution of the deed to his son ; and the charge of fraud is repelled by the proof, that till after the deed, all parties had every reason to suppose the estate of William Seward, junior, sufficient. ( 3 John. Ch. Rep. 501. ) In this view, actual fraud alone was the question. To this point, and that the debt of the father was contingent, and could not even have been proved under a commission of bankruptcy till after the deed, the counsel cited Bac. Abr. *Bankrupt* (E); John. Dig. *Insolvent*, II, and the cases there cited ; 1 John. Cas. 73 ; 9 John. Rep. 127 ; Doug. 92; 3 T. R. 539 ; 3 Atk. 410 ; Prec. Ch. 377 ; Gilb. Eq. Rep. 37 ; and 15 John. 261.

*T. J. Oakley*, in reply, denied that here was any thing paid by the grantee as a consideration for the land. The annuity was no more than a fair rent ; and the grantee would, therefore, lose nothing. Being a voluntary conveyance, it is fraudulent in law, notwithstanding the finding of the jury, though we admit it would not be so as to debts contracted after the deed was executed. As to these, the question would turn upon the fraudulent intent ; and the finding would perhaps be conclusive. He referred to 1 Mad. Ch. 217, 1st Am. ed. and the cases there cited.

*Curia*, per SUTHERLAND, J. It is admitted that there was no actual fraudulent intent on the part of William Seward, in making conveyance to his son, the defendant, of the 16th of April, 1818. But it is contended that the conveyance was voluntary, and therefore fraudulent, in judgment of law, as against the lessor of the plaintiff, who was a prior creditor.

1. Was Van Wyck a creditor within the statute ?

2. If a creditor, was the conveyance fraudulent as against him ?

The case of *Jackson* v. *Myers*, (18 John. 425,) and the authorities there cited, appear to me to establish the position that Van Wyck stood in a relation to William Seward, which entitled him to the protection of the statute. Whether he was strictly a creditor or not, within the meaning and provisions of the English bankrupt act, I do not think it material to inquire ; for our statute for the prevention of frauds, is not confined to creditors only, but it avoids all conveyances, &c. devised and contrived with the purpose and intent to delay, hinder, or defraud creditors and others, of their just actions, &c. &c.

Now most of the cases cited by the defendants' counsel, upon this point, were decisions under the English bankrupt acts ; and, admitting them to establish that the lessor of the plaintiff would not be considered a creditor under those acts, it would not follow, that he is not entitled to the protection of our act for the prevention of frauds. In *Jackson* v. *Myers*, (18 John. 425,) it was held that, although the plaintiff had no debt or demand against the grantor in the fraudulent conveyance at the time it was executed, but merely an action *in maleficio* pending, the deeds were fraudulent within the true construction of the statute. And in *Mountford* v. *Ranie*, (Keb. 499,) the conveyance was held fraudulent, although the plaintiff had become creditor only by the escape of a prisoner, and although the bond on which the judgment was obtained, had been given many years subsequent to the conveyance.

The question of creditor or not, cannot turn on the ground of contingent liability when considering this act. If it should, all indorsers and sureties would be deprived of its protection. It was said in *Twyne's case*, (3 Rep. 82,) and reiterated by this Court in *Jackson* v. *Myers*, that the statute extends not only to creditors, but to all others who had cause of action or suit, or any penalty or forfeiture. And it has always been held that the statute was entitled to a literal construction for the suppression of fraud.

The demand in this case, *fundamentally*, as it is expressed by Roberts, (in his treatise on Fraudulent Conveyances, 459,) arose before the conveyance. It arose upon a covenant prior in date to the conveyance, for the performance of a collateral, and, if you please, contingent act. But it cannot be said that the covenantor was ignorant of his liability, so as to exempt him from the imputation of fraud under the statute, if he has made a *voluntary* conveyance.

2. Was the conveyance in this case voluntary ? The consideration expressed in the deed is $10,000. The consideration proved, is an annuity to the grantor of $500 during his life ; and the bonds of the defendant to his sisters, the daughters of the grantor, for about $4500, payable in six months after his death. The annuity is proved to have been paid for four years. The bonds have not been paid. The grantor died in July, 1822. The essence of the transaction is the same as though the grantor had conveyed all his estate to his children, either in equal or unequal proportions, reserving an annuity from each, proportioned to the respective portions of the estate. Instead of giving any portion of his farm to his daughters, he gives the whole to his son, and charges it with the sums intended for the advancement of his daughters. The annuity paid to the grantor, cannot enure by way of pecuniary consideration to the support of the deed. The payments were subsequent to the conveyance. The annuity was in the nature of rent for the use of the farm ; and cannot be considered the consideration for the conveyance. It is a deed of gift to his children ; so intended by the grantor in perfect truth and honesty, and so understood by all the witnesses whom he consulted, or to whom he explained his views and wishes.

Is such a conveyance valid *against a prior creditor ?* Chancellor Kent, in *Reade v. Livingston,* (3 John. Ch. Rep. 481,) has discussed this question with his usual learning and ability ; and, after analizing all the cases, he comes (id. 500,) to this general conclusion : " That if the party be indebted at the time of a voluntary settlement, it is presumed to be fraudulent, in respect to such debts ; and no circumstances will permit those debts to be affected by the settlement, or repel the legal presumption of fraud." The pre-

sumption of law in this case does not depend upon the amount of the debts or the extent of the property in settlement, or the circumstances of the party. "There is," he observes, " no such line of distinction set up or traced in any of the cases. The attempt would be embarrassing, if not dangerous, to the rights of creditors, and prove an inlet to fraud. The law has therefore wisely disabled the debtor from making any voluntary settlement of his estate, *to stand in the way of his existing debts*. This is the clear and uniform doctrine of the cases."

With respect to the claims of *subsequent* creditors, he held that the presumption of fraud, arising from the circumstance that the party was indebted at the time, *may be repelled ;* that it is repelled by the fact of those debts being secured by mortgage, or by a provision in the settlement : that if no such circumstances exist, the subsequent creditor may show *prior indebtedness ;* that as to *subsequent debts*, there is no necessary legal presumption of fraud, from a voluntary conveyance ; and that there must be proof of fraud, in fact ; and that the indebtedness at the time of the conveyance, in order to be available to a subsequent creditor, must be such, in its circumstances and amount, as to justify the conclusion of fraud.

The Chancellor considers the case of *Salmon* v. *Bennett*, (1 Day's Conn. Rep. N. S. 525,) as against the current and weight of English decisions ; and as not intended to conform to those decisions upon the statutes against fraudulent conveyances. It would be worse than useless, for me to follow the Chancellor in his analysis of the English cases. I have looked into most of them, and am satisfied that, so far as is necessary for the decision of this case, the conclusions which he has drawn are fully warranted, not only on the ground of authority, but by considerations of the soundest policy and wisdom.

Judgment for the plaintiff.