BABCOCK v. ECKLER et al.

A husband, indebted to his wife in the sum of one thousand five hundred dollars and interest, for property which belonged to her at law, and in the further sum of two thousand dollars, with interest, for which equity would have regarded her as a creditor, transferred to the wife property, real and personal, to the value of sixteen thousand dollars. Such transfer, it seems, is not to be regarded as voluntary.

But, if voluntary, the husband retaining property of the value of ten thousand dollars, and being indebted in only the sum of nine hundred dollars, there is no legal presumption of fraud, but the question is one of fact.

The intent to defraud must be inferable from the circumstances; and, if the facts show that the settlement upon the wife was a proper and reasonable one, in the condition of the husband's estate at the time, it will not be invalidated by his subsequent inability to pay a debt then existing.

APPEAL from the Supreme Court. The trial was before a referee, who found these facts: In June, 1858, the plaintiff commenced a suit against the defendant John Eckler to recover his share or proportion of a loss in a venture entered into by them and one Parks in the purchase of corn. This purchase

was made by them in the fall of 1854, but the loss was not ascertained until 1856, and it was then about $900 to each of the three partners. Parks, subsequently and previous to the commencement of that suit, having died insolvent, Babcock, the plaintiff, sought to recover from Eckler the half of the total loss, and on the 30th of April, 1859, he recovered judgment against Eckler for the sum of $1,603.93, that being the one-half of the then ascertained loss, with interest to that date, besides costs of suit. An execution in that judgment having been issued and returned unsatisfied, this action was commenced to reach certain real estate, in the town of Phelps, Ontario county, claimed to belong to the said John Eckler, and alleged to have been fraudulently conveyed by him to the defendant Polly Eckler, his wife. They were married in 1829, and previous to that time Mrs. Eckler had inherited from her father land of the value of $2,000, which, by an agreement with her husband, was sold, and the proceeds, together with that of some land owned by him, were invested in the purchase of a farm in the town of Mendon, of which it was agreed they were to be equal owners, and the title to which was taken in the name of the husband. In 1850, Mrs. Eckler inherited from a sister land of the value of $1,500, which was sold, and the proceeds, with her assent, were invested, controlled and managed by her husband. In November, 1855, John Eckler, then being worth over $26,000, and having no debt or liability existing against him, excepting that for contribution to the loss (if any) growing out of the corn adventure of the fall of 1854, the existence of which was not shown to have been then known to him, in consideration of this property of his wife, and of love and affection, caused to be conveyed to Mrs. Eckler real estate in Brockport, and personal property, stocks, bonds, &c., all amounting in value to about $16,000, retaining for himself about $10,000. All the property thus conveyed to her, except the sum of $6,000, invested in the farm sought to be reached by the present action to satisfy the plaintiff's judgment, had been sold by her, and applied to the payment of her husband's debts contracted subsequently to January 1st, 1857.

Babcock *v* Eckler.

The referee found, as a question of fact, that neither the conveyance of the property in November, 1855, to Mrs. Eckler, nor of the farm purchased with a portion of the proceeds thereof, were made, procured, or secured with the intent to defraud the plaintiff or the other creditors of the said John Eckler. And he held, as a conclusion of law, that the fact that said John Eckler was liable to the plaintiff in the manner mentioned at the time of the conveyance in November, 1855, and the subsequent purchase with a portion of the proceeds of that property of the Phelps farm, and the conveyance thereof to Mrs. Eckler, was not, under the circumstances, conclusive evidence of fraud against the parties to such conveyance; and he also found, as a conclusion of law, that the plaintiff was not entitled to have satisfaction of his judgment out of said property. On his report, judgment was entered at special term in favor of said Polly Eckler, which on appeal was reversed at general term and a new trial ordered.

*William C. Rowley*, for the appellants.

*William F. Cogswell*, for the respondent.

DAVIES, J. In the examination of this case it is only necessary, in our opinion, to ascertain whether the conveyance of the Brockport property and the transfer of the stock and bond to Mrs. Eckler in November, 1855, were or not valid and effectual to vest the same absolutely in her. For if we come to the conclusion that she was then the legal owner of the property thus conveyed and transferred, it follows as a necessary consequence that she is also the legal owner of the Phelps farm, which was subsequently purchased with a portion of the proceeds of this property.

There can be no question that, since the passage of the acts of 1848 and 1849, Mrs. Eckler was the absolute owner of the property inherited from her sister in 1850, the same as if she were a *feme sole*, and that, although her husband had reduced to possession the $2,000 received on the sale of land inherited

from her father, a court of equity would protect her rights therein, and make a just and proper settlement thereof on her. If her statement of the agreement between her and her husband is to be regarded as evidence, then in addition to these sums she was entitled to receive, absolutely in her own right, one-half of all the property acquired by them during marriage, and the total amount thus transferred to her in November, 1855, does not greatly exceed the sums confessedly due to her, and such half thus acquired. The conveyance and transfer, therefore, made in 1855, cannot be said to be voluntary. They were made to satisfy, in part, a just and conceded debt due to Mrs. Eckler, and to vest in her her share of the acquired property during marriage. They were made by a solvent man, who did not then know he was indebted to the plaintiff at all, and it is found, as a matter of fact, that at that time he owed no other debt whatever. If he had supposed that he was indebted at all to the plaintiff, and then knew the exact amount of his share of the losses on the corn adventure, that sum was then only about $900, and he retained to himself property valued over $10,000. It is very difficult to perceive upon what basis the allegation of an intent to defraud the plaintiff by such conveyance and transfer can be predicated upon these facts.

John Eckler was undeniably indebted to his wife in at least the sum of $3,500, and conceding he owed the plaintiffs in 1855 $900, he retained in his possession of his whole property more in proportion to pay that debt than he conveyed and transferred to her in satisfaction of what was due to her. From these circumstances, it is impossible to say that there could have been any intent, in fact, to defraud the plaintiff. Does the law impute such fraudulent intent from the sole fact of such indebtedness of Eckler, conceding that he then knew such indebtedness to exist? It certainly cannot be argued that he can have disposed of his estate with intent to defraud the plaintiff, his creditor, unless he knew or had reason to suppose that he was such creditor. This subject has received the most careful and elaborate discussion in this State, and the

principles which have been settled should be adhered to. The leading case relied on to avoid a conveyance, transfer, or settlement purely voluntary, is that of *Reade* v. *Livingston* (3 Johns. Ch., 481). In that case the conveyance was to a trustee for the benefit of the grantor's wife, and was voluntary, without any consideration or any prior indebtedness to her. It was urged, to uphold it, that the husband previous to the marriage had made a parol promise to settle $30,000 on his wife. The Chancellor regarded it as a voluntary settlement, unconnected with any ante-nuptial agreement, and he states the question to be, whether such a voluntary settlement after marriage, by a party indebted at the time it is made, be not, as against such creditors, absolutely fraudulent and void, and he was of the opinion that that question could be most satisfactorily answered in the affirmative.

*Jackson* v. *Seward* (5 Cow., 67) was an action of ejectment, and the defendant claimed under a deed from his father to him, made when the father was indebted to the plaintiff's lessor. The deed, on its face, was for the consideration of $10,000; but the true consideration was certain bonds of the defendant, one to a sister for $2,277.50; one to another sister for $2,175, both bearing even date with the deed, and payable six months after the death of his father; and a bond in the penalty of $10,000 to his father, of the same date, conditioned to pay him an annuity of $500 in half-yearly payments, on which were indorsed, in the father's handwriting, the payment of these annuities in April of the years 1819, '20, '21, '22, and the only question made was whether the deed to the son was fraudulent in law. The Supreme Court held that it was, and that the conveyance was voluntary, being a deed of gift by the grantor to his children, and so intended by him; and the ruling of Chancellor KENT, in *Reade* v. *Livingston*, is quoted with approbation, that, "if the party be indebted at the time of a voluntary settlement, it is presumed to be fraudulent in respect to such debts, and no circumstances will permit those debts to be affected by the settlement or repel the legal presumption of fraud." A writ of error was brought

and the case was heard in the Court of Errors, and is reported in 8 Cowen, 406. The judgment of the Supreme Court was reversed, only one Senator dissenting, and the following points, may be regarded as ruled by the court in that case: 1. That, to make a deed voluntary, it must be without any the least valuable consideration. 2. That the deed in that case was not voluntary. 3. When a conveyance of land is upon any the least valuable consideration, the question whether it be fraudulent as to creditors belongs exclusively to the jury as a question of fact. 4. That a conveyance from a parent to a child, in consideration of love and affection, in other words voluntary, is not absolutely void even as to existing creditors, but the presumption that it is fraudulent may be repelled by circumstances; and this last proposition seems to be fully sustained after an elaborate review of all the English and American authorities on the point by ALLEN, Senator.

In 1832, questions upon this conveyance and the gifts of the bonds to William Seward's children arose in the Court of Chancery, on a bill filed by Van Wyck to set them aside. The Vice-Chancellor held himself precluded, by the decision of the Court of Errors and the verdict of the jury in that case that there was no fraud in fact, from inquiring into the validity of the deed from William to his son; and he says, if it was an open question whether that deed was a voluntary conveyance and to be deemed constructively fraudulent, and whether the evidence in that case made out a case of actual and intentional fraud, he should have great difficulty in answering those questions affirmatively. But I think he distinctly affirms the rule of the Court of Errors, when, speaking of the gifts of the bonds by the father to his children, received from his son on the execution of the deed to him, he says, "If the donor is indebted at the time, such a thing may be *prima facie* evidence of fraud against a creditor, but this presumption may be repelled by proof or circumstances." The decree of the Vice-Chancellor was affirmed by the Chancellor (6 Paige, 62), not on the ground upon which the decision of the former was placed, that the judgment in the ejectment

suit was a bar, but on the ground that there was no actual fraud in the case. The Chancellor says, " I presume it cannot be seriously urged, that when a parent makes an advancement to his child honestly and fairly, retaining in his own hands, at the same time, property sufficient to pay all his debts, such child will be bound to refund the advancement for the benefit of creditors, if it afterwards happens that the parent, either by misfortune or fraud, does not actually pay all his debts which existed at the time of the advancement." The decision of the Chancellor was affirmed by the Court of Errors (18. Wend., 375)—Senator MAISON, the only Senator giving an opinion voting with the majority of the court, stating that the case of Jackson v. Seward, decided in that court, destroyed the distinction which had been supposed to exist between fraud in law and fraud in fact, and that the principles there established ought to control the decision of the present case. But, by the provisions of the Revised Statutes, the question of fraudulent intent, in all cases, is to be deemed a question of fact and not of law, and it is declared that no conveyance or charge shall be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration. (2 R. S., p. 137, § 4.)

In Robinson v. Stewart (10 N. Y., 190), the grantor, at the time of the conveyance to his son, was hopelessly insolvent, and the facts disclosed authorized the court to declare the conveyance fraudulent as to creditors. I am unable to see anything in that case which adds strength to the positions taken on the part of the respondents.

The case of Carpenter v. Roe (10 N. Y., 227), is, in fact, an authority for a reversal of the judgment in the present case. In that case, the conveyance procured by a husband to be made to his wife was confessedly voluntary and without consideration. The husband was at the time largely indebted, though in unembarrassed circumstances, and believed himself fully able to discharge all his debts and liabilities at maturity. Judge GARDINER, in delivering the opinion of the court, says, " It was sufficient that he was indebted, and that insolvency

would be the inevitable or probable result of want of success in the business in which he was engaged. He could not, legally or honestly, in this manner provide for himself or family and cast upon his creditors the hazard of his specula-tion." Judge GARDINER cites with approbation the case of *Hinds' Lessees* v. *Longworth* (11 Wheat., 199), where the court held a voluntary deed not to be absolutely fraudulent. The court says, "If it can be shown that the grantor was in pros-perous circumstances and unincumbered, and that the gift was a reasonable provision according to his state and condi-tion in life, and leaving enough for the payment of the debts of the grantor, the presumptive evidence of fraud would be met and repelled."

Applying these principles to the present case, I arrive at the conclusions, 1. That the conveyance sought to be set aside was not voluntary, but one founded on a good and valuable consideration, to wit, the indebtedness of the husband to the wife; 2. That, even if the conveyance was voluntary, it falls within the rule laid down in the case in 11 Wheaton, and which has been approved of by this court, that at the time it was made in November, 1855, the grantor was in prosperous and unembarrassed circumstances, the gift, under all the cir-cumstances of indebtedness to the wife and the agreement to divide with her equally the earnings of their married life was a reasonable and proper provision for her and her children, the husband retaining for himself nearly an equal amount; and it being conceded, that enough and far more than enough was retained by him to pay off and discharge the debts which it was subsequently ascertained that he owed, or which at the time he might reasonably have supposed he owed. If fraud could therefore be presumed, the facts and circumstances suf-ficiently rebut it, and I can see no ground upon which the arrangement and conveyance made in November, 1855, can be impeached. Subsequent indebtedness cannot be invoked to make that fraudulent which was honest and free from im-peachment at the time, especially in a case like the present, when the grantee has voluntarily appropriated the larger

Babcock *v.* Eckler.

portion of the property conveyed to her, in payment and discharge of such subsequent debts, retaining only about the amount of the debt which is undeniably due to her. This court held, in *Robinson* v. *Stewart*, that it was lawful for the father to provide for the payment of the debt justly due from him to his son, and that, to the extent of that debt, he might lawfully be preferred. There could therefore be no objection, even if Mr. Eckler had been embarrassed and even insolvent in 1855, in his securing to his wife payment of the sums due to her, or in his transferring property adequate to secure its payment. He had a right to prefer her to his other creditors, if he saw fit so to do. But we think in this case the conveyance could be sustained, even although it had been voluntary and without any consideration, upon the authority of *Hinds' Lessees* v. *Longworth* (*supra*), and of *Carpenter* v. *Roe*, in this court.

The order of the Supreme Court granting a new trial should be reversed, and the judgment of the special term should be affirmed, with costs.

SUTHERLAND, J. From the opinion given at the general term it would appear that a new trial was granted on the ground that, from the facts found by the referee relating to the transfer of the property in 1855, the law presumed that transfer to have been fraudulent as to the plaintiff as a creditor of Eckler, and that, therefore, the referee's conclusion of fact, that such transfer was not fraudulent, was erroneous. This, I think, was a mistake. There cannot properly be said to be any such presumption of law from the facts found by the referee, even assuming that such transfer was entirely voluntary; that Mrs. Eckler was not a creditor of her husband to any amount, and that the plaintiff was a creditor of his to the amount of his judgment at the time of such transfer. Fraud implies a fraudulent intent, and is an inference or conclusion of fact drawn from the facts or circumstances of the particular transaction. If it is a presumption, it is a presumption of fact, and not of law. (1 Greenl. Ev., §§ 44, 48.) When a party is charged with fraud, the presumption of law is, that he is innocent until it

has been shown that he is guilty. (1 Greenl. Ev., § 80.) The circumstances to show fraud, and the circumstances to rebut it, are arguments on the question of fraud, and a conclusion on the question of fraud is a conclusion of fact arrived at by weighing those arguments.

If the necessary consequence of a conceded transaction was defrauding another, then, as a party must be presumed to have foreseen and intended the necessary consequences of his own act, the transaction itself is conclusive evidence of a fraudulent intent; for a party cannot be permitted to say that he did not intend the necessary consequence of his own voluntary act. Intent or intention is an emotion or operation of the mind, and can usually be shown only by acts or declarations, and as acts speak louder than words, if a party does an act which must defraud another, his declaring that he did not by the act intend to defraud, is weighed down by the evidence of his own act. But in such a case it is not proper to say that there is a presumption or conclusion of law that the transaction is fraudulent; but it is proper to say that the circumstances of the transaction, or the transaction itself, is conclusive evidence of fraud; and if in such a case, against such evidence, a jury or referee should find that there was no fraud, a new trial would be granted, not because any legal presumption or conclusion had been violated, but because the finding was against the weight of evidence; against conclusive evidence.

In *Reade* v. *Livingston* (3 John. Ch., 500, 501), Chancellor KENT held that a voluntary conveyance was presumed to be fraudulent as against all existing debts, without regard to their amount, or the extent of the property conveyed or retained by the grantor: that the presumption of fraud in such case was a presumption of law, and could not be repelled by proof of circumstances going to show that in fact there was no intention to defraud. This decision assumed, as a principle of law, that a voluntary conveyance was void as to any and all then existing creditors, without regard to the question of intention; because it might ultimately operate to defeat the collection or payment of their debts. A similar doctrine was held by the Chan-

'cellor in *Bayard* v. *Hoffman* (4 John. Ch., 450). It is not important now to inquire how far this doctrine was supported by the cases cited by the Chancellor. Certainly, Lord MANS-FIELD held a different doctrine in *Cadogan* v. *Kennet* (Cowp., 434). A different doctrine was held in *Jackson* v. *Town* (4 Cow., 599), and by Judge SPENCER in *Verplanck* v. *Sterry* (12 John., 556, 557), though perhaps not decided in the case. In this case Judge SPENCER said: "If the grantor be not indebted to such a degree as that the settlement will deprive the cre-ditors of an ample fund for the payment of their debts, the consideration of natural love and affection will support the deed, although a voluntary one, against his creditors; for, in the language of the decisions, it is free from the imputation of fraud." In *Jackson* v. *Seward* (8 Cow., 406), it was held by the Court of Errors that a conveyance or settlement, in con-sideration of blood and natural affection, though by one indebted at the time, was *prima facie* only, and not conclusively fraudu-lent. Subsequently, by section 4, of title 3, chapter 7, part 2 of the Revised Statutes (2 R. S., 137), it was declared that the question of fraudulent intent, in all cases arising under the provisions of that chapter, should be deemed a question of fact; and that no conveyance or charge should be adjudged fraudulent as against purchasers or creditors, solely on the ground that it was not founded on a valuable consideration. The question in this case arises under the provisions of this chapter of the Revised Statutes, which treats "of fraudulent conveyances and contracts, relative to goods and chattels and things in action." No decision or series of decisions, then, can make the question of fraud in this case a question of law, or establish that there is a legal presumption of fraud from the facts and circumstances found by the referee; for the statute declares that the question of fraud shall be deemed a question of fact; and by declaring it to be a question of fact, in effect declares that there is no such legal presumption. No decision or series of decisions can repeal a statute. The statute sub-stantially declares, and was intended to declare, the doctrine held in *Jackson* v. *Seward*. (8 Cow.)

The question of fraud, then, in this case, was a question of fact, for the referee to decide under all the circumstances of the case; and looking at the facts and circumstances specially found by him and on which he decided it, particularly the fact that Eckler did not transfer to his wife all his property in 1855; that he retained in available securities more than six times the amount of the debt of the plaintiff, even as it was established more than three years afterwards; that he was not indebted to any one at the time of such transfer except the plaintiff; I do not see how the general term could grant a new trial in this case without disregarding the statute, and returning to the doctrine of Chancellor KENT in *Reade* v. *Livingston.*

I think the doctrine of *Hinds' Lessees* v. *Longworth* (11 Wheat., 199); of *Jackson* v. *Post* (15 Wend., 588); of *Salmon* v. *Bennet* (1 Conn., 525), is substantially the doctrine of Judge SPENCER in *Verplanck* v. *Sterry* (*supra*), and that doctrine certainly does not interfere with the conclusion of fact, to which the referee arrived as to the transfer of the property in 1855. The question really is, and must be in such cases, considering the amount of debts and the value or amount of the property retained, and all the other circumstances of the case, is the conveyance or transfer fraudulent?

I think, in this case, the facts and circumstances and the law justified the referee's conclusion; but if the general term thought he might have come to a different conclusion, I do not see upon what principle they granted a new trial. The view I have taken of the question has been the most favorable for the respondents, for I have assumed the transfer of the property to Mrs. Eckler, in 1855, to have been voluntary; but I am inclined to think that, on the facts found by the referee, Mrs. Eckler in equity would have been deemed a creditor of her husband to the amount of $3,500. My conclusion is, that the order of the general term, granting a new trial, should be reversed, with costs.

SMITH, J., dissented; SELDEN, Ch. J., did not sit in the case.

Judgment at special term affirmed.