THOMAS NEWMAN *vs.* JOHN P. CORDELL and wife.

On the 6th of July, 1859, J. P. C., being indebted to the plaintiff, at the time, on a note part due, executed and delivered to E. C., his sister-in-law, a deed of certain premises then owned by him.   On the 20th of September, 1859, E. C. executed and delivered to one H. a deed of the same premises. On the same day, H. executed and delivered to A. C., the wife of J. P. C., a deed conveying to her certain lands in W., of which he was the owner. The only consideration for this last conveyance was the property deeded to H. by E. C., the two pieces being considered of about equal value.   In March, 1861, the plaintiff recovered a judgment against J. P. C. upon the note, and an execution issued thereon was returned unsatisfied.

*Held,* that in the absence of any explanation whatever to show the reason why, or how and in what manner, H. became connected with the affair, and

Newman *v.* Cordell.

why he executed a deed to A. C. for a piece of real estate without receiving any consideration from her, and only received, in exchange, a deed from E. C. of another piece of property, which formerly belonged to A. C.'s husband; and with no evidence to prove that A. C. ever paid a particle of consideration for the property conveyed to her by H., or that she had any means of her own; it was extremely suspicious upon the face of the transaction, that these conveyances should have been made, under such circumstances, and that A. C. should have thus acquired a title to, and she and her husband be in the possession of, real estate of the same value as that formerly owned by the latter.

And that J. P. C. and his wife, in an action brought against them by the plaintiff to have the deeds declared void as being in fraud of J. P. C.'s creditors, were called upon to explain the suspicious circumstances; and in the absence of a satisfactory explanation, a strong conviction was fastened upon the mind, difficult to be removed, that the whole affair was not *bona fide* and honest, but a mere cover to place J. P. C.'s property in the hands of his wife, so as to prevent its being reached by his creditors.

*Held, also,* that although the plaintiff was bound to establish a want of consideration, for the conveyances, he might do so by circumstances, as well as by positive evidence.

*Held, further,* that there was at least a fair question for the jury to determine, as to the intent of J. P. C.; and that if there was enough testimony to be presented to them, then their finding upon that question should not be disturbed.

And that although J. P. C. swore that there was no intention to defraud the plaintiff, or to prevent the recovery of any claim the plaintiff might have against him, his statement was not to be regarded as entirely conclusive or satisfactory.

That if there was no consideration in fact for the conveyances to E. C. and A. C. respectively, nor any evidence to that effect, then, as a matter of course, those grantees each had knowledge of the intention of J. P. C., and a fraudulent intent on their part must be presumed. And in that contingency neither of them was a *bona fide* purchaser, and was not in a position to rely upon a want of knowledge of the intention of J. P. C.

The absence of evidence which it is in the power of the party to produce is often as effective, in disposing of a case, as testimony of a positive character. *Per* MILLER, J.

Where conveyances are attacked for fraud, and there are many facts surrounding the case which cast suspicion upon the transaction, the defendants should be prepared to meet the allegations of unfairness; and if they fail to do so, the plaintiff will be entitled to the benefit of all the unfavorable inferences which may legitimately be drawn from their neglect, and the general features of the case.

The denial of a party charged with fraud, that there was any intention to defraud the plaintiff, can scarcely be regarded as any thing more than an

expression of the opinion of the party charged with the fraud, as to the character of the transaction, and his own estimate of it.

While the party alleging fraud is bound to prove his allegation, by sufficient evidence, it is not essential that it should be established by direct proof. Resort may be had to circumstantial and presumptive evidence.

The rule is well settled, that to make a conveyance fraudulent as to the grantor, fraud or fraudulent intent must be shown on the part of the grantee, as well as on the part of the grantor.·

THIS was an action, brought on the equity side of the court, for the purpose of having certain deeds, alleged to have been executed for the purpose of defrauding creditors, declared void, and to have certain lands held in the name of Angeline Cordell, wife of the defendant John P. Cordell, adjudged to be in fact the property of John P. Cordell, and liable to be sold for the payment of his debts. The cause was tried before Justice HOGEBOOM and a jury ordered to try the issues of fact made by the pleadings, at the Albany circuit, in January, 1863. It appeared upon the trial that the plaintiff held a note against John P. Cordell, dated May 27, 1857, payable in one year after date, for $300 and interest. In October, 1860, a suit was brought upon this note, and the plaintiff recovered a judgment against the defendant, which was docketed in the Albany county clerk's office, March 23, 1861, for $422.94, damages and costs. The judgment could not be collected upon execution which had been issued and was returned unsatisfied. That the defendant, John P. Cordell, on the 6th of July, 1859, executed and delivered to his sister-in-law (his brother's wife) a deed of certain premises in Albany, then belonging to the grantor. That on the 20th of September, 1859, this sister-in-law of the defendant, Elizabeth Cordell by name, executed and delivered to one Joseph Hilton a deed bearing date on that day, and conveying to Hilton the same premises which John P. Cordell had conveyed to Elizabeth. On the same day, Joseph Hilton executed and delivered to Angeline Cordell, the wife of John P., a deed bearing date on the above day, and conveying to her lands in Watervliet, in Albany county, of which he was

Newman *v.* Cordell.

then the owner. It was alleged that the conveyance from John P. to Elizabeth Cordell was made without consideration, and was executed for the purpose of defrauding creditors, &c. and especially to defraud the plaintiff. The only consideration for the execution of the deed by Elizabeth Cordell to Joseph Hilton was the execution of the deed by Hilton to Angeline Cordell, the wife of John P.; and the only consideration Hilton had for the execution of such deed to Mrs. Cordell was the deed from Elizabeth Cordell to him. The plaintiff called John P. Cordell as a witness, upon the trial, and, among other facts, proved that the property he conveyed to his sister-in-law was worth $1300 over and above the incumbrances; and that the real estate conveyed by Hilton to the defendant's wife was worth about the same amount. That at the time the execution was issued he had no property liable to execution. He also swore that at the time he conveyed the premises to Elizabeth Cordell she paid him money; that he received from her, at different times, $600; that he had forgotten how much he received at the time of the transfer; that at that time his brother, David R. was living, and that Elizabeth gave him no notes or mortgage, on the transfer; and that it was so long ago he could not recollect the exact amount he received from her. That a man by the name of Leet and a young girl were present when the deed was delivered, and that Leet was dead, and the girl living in Bethlehem. That he owed David's wife; could not tell the amount, or how long it had been due. It had been standing from six months to a year. It had accrued within four but not all within three years. Had owed her for six months to a year; perhaps longer. Could not say how much. The defendant further swore that Elizabeth had notes against him at the time of the transfer, but he could not tell whether any of them were signed by other persons; nor could he tell the amount of his indebtedness to her; the amount of notes she held was some $500. He further swore that there was money paid him for the property, besides that paid on the

delivery of the deed, but none was paid after it; and the money paid before the delivery was all paid at once. David (his brother) paid him $600 at one time, a day or two before the delivery, and the balance, something like $100, on the day of delivery. The agreement in reference to the transfer was that he was owing her upon notes; the notes were to be allowed as a part of the consideration; some $600 and over was to be paid in cash; and she was to take the property subject to the mortgages. He further swore that a man by the name of James Jordan was present when the $600 was paid, and that he was then in court; that no receipt was taken when that money was paid; that he continued to live on the premises conveyed to his sister-in-law, until the exchange with Hilton, when he moved to Watervliet. The defendant further swore that Elizabeth Cordell had never been in possession of the property conveyed to her by him, any more than to receive the deed therefor. Upon his cross-examination by the defendant's counsel, the witness testified that the consideration for the deed to Elizabeth, as near as he could get at it, was about $700 in cash, $500 that he owed her and she to take the place subject to the mortgages already on it, $860; that he negotiated with his brother David R. as agent for his wife, Elizabeth; that he did not make the transfer with intent to defraud his creditors.

The defendant moved for a nonsuit, upon several grounds mentioned in the opinion. The motion was denied, and the defendant's counsel excepted. The defendant's counsel then requested the court to charge the jury upon several points, which requests were refused. The questions of fact were submitted to the jury, who found a verdict in favor of the plaintiff, upon all the issues in the case; and judgment being entered thereon, the defendant appealed to the general term.

*Mr. Havens,* for the appellants.

*R. W. Peckham, Jr.* for the respondent.

*By the Court,* MILLER, J. The most important questions in this case arise upon the motion made by the counsel for the defendants, at the close of the evidence, to nonsuit the plaintiff.

*First.* The first point to be considered in this connection is whether there was sufficient evidence of fraud and of a fraudulent intent on the part of John P. Cordell, in the whole transaction, to authorize the court to submit the case to the jury and which would justify the jury, in connection with other evidence, in rendering a verdict in favor of the plaintiff.

(1.) I think it may be said with propriety that the transaction presented by the evidence in this case has some strange characteristics. The defendant John P. Cordell conveys his real estate in Albany to Elizabeth Cordell, the wife of his brother. About two months after this conveyance, Elizabeth conveys the same premises to one Joseph Hilton a third party. On the very same day Joseph Hilton conveys another piece of real estate situated in Watervliet to Angeline Cordell the wife of John P. Cordell, and one of the defendants in this suit. The only consideration of this last transfer which appears to have been made in connection with the conveyance to Hilton, was the property deeded to Hilton by Elizabeth Cordell. The defendant John P. Cordell was, at the time, apparently in embarrassed circumstances, and was indebted to the plaintiff for the amount of a note for which a judgment was subsequently obtained, to enforce the collection of which this action was brought. The two pieces of real estate thus transferred appear to have been considered of about equal value, and the one was regarded as an equivalent for the other, in the transaction between the parties. With no explanation whatever to show the reason why, or how and in what manner, Joseph Hilton became connected with this business, and why he should have executed a deed to the wife of John P. Cordell, of a piece of real estate for which he received no consideration from her, and only received a deed of another piece of property from Elizabeth Cordell,

upon the same day, which formerly belonged to the husband of Angeline Cordell ; with no evidence to prove that the wife ever paid a particle of consideration for the property conveyed to her by Hilton, or that she had any means of her own to do so; it is certainly remarkable that she should find herself invested with the title of property equivalent in value to that which had been conveyed away by her husband only a short time previously. It is suspicious, extremely suspicious upon its face, that these conveyances should have been made under such circumstances, and that the wife should thus have acquired a title and she and her husband be in possession of real estate of the same value as that owned by the husband before the conveyance executed to Elizabeth Cordell. I think the defendants were called upon to explain these singular facts of the transaction, and in the absence of the evidence of Elizabeth Cordell, the wife, who was a competent witness, (31 *Barb.* 506 ; 37 *id.* 44,) or any other person, to show how it happened that these transactions should have occurred, a strong conviction is fastened upon the mind, difficult to be removed, that the whole affair was not *bona fide* and honest, but a mere cover to place the defendant John P. Cordell's property in the hands of his wife, so as to prevent its being reached by his creditors.

(2.) I think, so far as the evidence relates to the payment of a consideration for the conveyances made to Elizabeth and to Angeline Cordell, it is by no means satisfactory. It is true that the plaintiff must establish a failure of consideration; but he may do so as well by circumstances as by positive evidence. It is said that John P. Cordell's testimony shows a valid and full consideration for the conveyance executed by him to Elizabeth Cordell, and if there was no fraud in this the action must fail. There are, I think, some circumstances which may be considered as detracting from his credibility, and impairing the force and strength of his evidence. In the first part of his direct examination, he swears that he received $600, at different times. He has forgotten how

much, but he thinks over $100 on the day of the convey-
ance. He can not recollect the exact amount he got of her.
In contradiction of this he subsequently testifies that his
brother David paid him $600 at one time *a day or two* before
the deed was delivered, and the balance, something like $100,
upon the delivery of the deed.

He also swears that one Jordan was present when the
$600 was paid, and a little girl when the deed was delivered.
It may be observed, in reference to this testimony, that it
was not very specific as to date, time, or amounts. It gave
no details as to these payments, if made as first stated at dif-
ferent times, and it was somewhat inconsistent and contra-
dictory. The facts occurring upon such an occasion would
naturally make an impression which would not very soon be
effaced from the memory, and it is somewhat singular that
the evidence should not have been clearer, and more accurate
and specific.

It will also be noticed, that he calls no one to corroborate
him upon the material points in controversy to which his
testimony related. Jordan, who saw the money paid, he
states, was present in court and the girl, Elizabeth Cordell,
and his own wife were within his reach, and could doubtless
have been obtained if desired; the plaintiff endeavored to
procure the attendance of Elizabeth, but was unable to find
her. As to the deed to Angeline Cordell, although she
swears in her answer that she paid a valuable consideration
out of her separate property, for the farm in Watervliet, yet
there was no evidence, whatever, to show that any consider-
ation was paid by her, or that she had any property of her
own. Why was she not produced and sworn as a witness?
If it was true, as set forth in her answer, she could have stated
every thing that she knew in regard to it, and might have'
been able to make a perfect explanation of the whole trans-
action. The absence of evidence which it is clearly in the
power of the party to produce, is often as effective in dipos-
ing of a case as testimony of a positive character. The

conveyances in question were attacked for fraud, and certainly there were many facts surrounding the case which cast suspicion upon the transaction. The defendants should have been prepared to meet these allegations of unfairness, and as they, failed to do so the plaintiff was entitled to the benefit of all the unfavorable inferences which might legitimately be drawn from their neglect and the general features attending the case.

. (3.) Although the defendant John P. Cordell swears that there was no intention to defraud the plaintiff, or to prevent a recovery of any claim which the plaintiff might have against him, I do not consider that his statement is to be regarded as entirely conclusive or satisfactory.

As was justly remarked by Sutherland, J. in *Babcock* v. *Eckler*, (24 *N. Y. Rep.* 623,) "Intent or intention, is an emotion of the mind, and can usually be shown only by acts and declarations; and as acts speak louder than words, if a party does an act which defrauds another, his declaring that he did not by the act intend to defraud is weighed down by the evidence of his own act." .Such testimony can scarcely be regarded as any thing: more than an expression of an opinion of the party charged with the fraud, as to the character of the transaction and his own estimate of it. While the party alleging fraud is bound to prove his allegation by sufficient evidence, (*Hildreth* v. *Sands*, 2 *John. Ch.* 43, and 14 *John.* 498,) it is not expected that it should be established by direct proof, and resort may be had to circumstantial and presumptive evidence. (*Waterbury* v. *Sturtevant*, 18 *Wend.* 353. *Jackson* v. *King*, 4 *Cowen*, 220.) The intent to defraud may be inferrible from circumstances. (24 *N. Y. Rep.* 623.) Sometimes a combination of circumstances will characterize a transaction, so plainly and so clearly as to stamp upon it unerring and indelible marks of fraud, which can not be mistaken, and the transaction itself will present phases so remarkable and peculiar, that no fair minded person will hesitate to pronounce it as fraudulent. These *indicia*

are often the clearest proof in the world, and quite as reliable as positive evidence. As there were circumstances connected with the conveyance of John P. Cordell's property to Elizabeth Cordell, and the subsequent transfer of other property back to his wife, which threw doubt and distrust on the fairness and integrity of the transaction, and which were not explained by any other testimony, it does not follow, by any means, that implicit confidence was to be placed in the whole of his statements. It follows from the remarks already made that there was at least a fair question for the jury to determine the intent of John P. Cordell, from his own evidence and from the facts and circumstances connected with the case. And if there was enough testimony to present to them, then their finding should not be disturbed upon that question.

*Second.* The next question which properly presents itself for consideration relates to the fraudulent intent of Elizabeth Cordell and Angeline Cordell in taking a conveyance of the real estate deeded to them respectively. The rule is well settled, that to make a conveyance fraudulent as to the grantor, fraud or fraudulent intent must be shown on the part of the grantee, as well as the grantor. (18 *Wend.* 365. 2 *John. Ch.* 35. 18 *John.* 515.) If, however, there was no consideration in fact nor any evidence to that effect, then as a matter of course Elizabeth and Angeline Cordell each had knowledge of the intention of John P. Cordell, and a fraudulent intent on their part must be presumed. In that contingency neither of them was a *bona fide* purchaser, and was not in a position to claim a want of knowledge of the intention of the defendant John P. Cordell. The proof in the case bore upon this as well as the questions already discussed, and it can scarcely be insisted that there was no proof because positive evidence was not introduced. Circumstantial evidence is often as potent as direct testimony; for circumstances can not lie, while human testimony is often uncertain and unreliable. Some of the remarks made in discussing the other points, as to the general characteristics

of the transaction, have a bearing upon the point now under discussion, and it is therefore unnecessary to enlarge upon it. Angeline Cordell was a defendant, and the question of intent as to her and Elizabeth was a proper subject for determination upon a consideration of the whole case.

*Third.* The point urged on the motion for a nonsuit, that there was no allegation in the complaint of any bad faith or fraudulent intent on the part of Angeline Cordell, I think can not be sustained. The complaint alleged that she gave no consideration for the premises in Watervliet, conveyed to her, and that the whole consideration came from her husband. The whole statement presented a case showing that a fraud had been perpetrated by her husband John P. Cordell, in conveying away his real estate with an intent to defraud his creditors, and that she was a party to that fraud, for his benefit. If the complaint was informal, it could have been amended at the trial, and it is not too late, even now, to grant such an amendment as would make it conform to the proof. I think, however, it is sufficient, and the objection is not a valid one.

*Fourth.* The remaining exceptions relate to the charge of the judge, and his refusals to charge. He is supposed to have erred in refusing to charge as requested, and in charging in several particulars which I shall have occasion to examine.

(1.) He declined to charge that in the absence of any express evidence to establish a fraudulent intent in John P. Cordell, the plaintiff was bound by his evidence which showed that the conveyance was made in good faith and for a valuable consideration, but submitted the same for the jury to determine. I see no objection to such refusal, or to this portion of the charge. The question whether the conveyance was made in good faith and for a valuable consideration was for the jury; and if the judge had charged as requested he would have disposed of the case without submitting it to them. Even if the defendant is correct in

claiming that there was no express evidence to establish such fraudulent intent, the proposition embraced too much; and as it was clearly wrong in part, there was no error committed by the judge in refusing to charge as requested. A request to charge the jury should be made in such form that the court may charge in the very terms of the request, without qualification.' (11 *N. Y. Rep.* 61.) The judge is not required to separate a proposition of this kind and pick out what is good and refuse the rest. (*Keller* v. *N. Y. Central R. R. Co.*, 24 *How. Pr. R.* 172.) I also think the judge did no injustice to the defendants in leaving the whole question embraced in the defendant's proposition to the jury. It was for them to say whether there was any express evidence, and whether the evidence established any fraudulent intent. Also whether the testimony of John P. Cordell proved a valid and good consideration for the conveyance, and good faith in its execution; and the court was not authorized to assume that it did.

(2.) The next exception also is not well founded. I do not think that the judge was authorized to ·charge that the evidence showed that the transfer from John P. Cordell to Elizabeth was made for a good consideration. The evidence was to be considered in connection with the circumstances attending the case. To claim thus much, it would be necessary to assume that the testimony of John P. Cordell was entirely consistent with all the other facts appearing upon the trial. If there were any inconsistencies it was the duty of the jury to reconcile them if they could, and if they could not, to give credit to such portion of his testimony as was justified by the circumstances. It was peculiarly within their province to determine whether his evidence established a valid consideration, and this was properly submitted to them by the judge.

(3.) Nor do I think that the succeeding exception can be upheld. There certainly were some circumstances which tended to show that Elizabeth Cordell was not a *bona fide*

purchaser for a valuable consideration, and that she had knowledge of the fraudulent intent; and it was therefore appropriate and right for the court to refuse to charge that there was no evidence upon that point, and to charge that there was no positive evidence on that subject; but the circumstances were for their consideration.

(4.) I am also of the opinion that the judge committed no error in refusing to instruct the jury that if John P. Cordell had a fraudulent intent in conveying away his property, any intention of fraud on the part of Elizabeth Cordell, his vendee, was so much the less presumable. Why should *it* be less presumable because John P. had a fraudulent intent? I think the judge fairly left it for the jury to determine the matter, as a question of fact.

(5.) The remaining exception to the refusal to charge, and the charge made, is equally untenable. I think the judge would not have been justified in saying to the jury that there was nothing in the case showing that Angeline Cordell had any knowledge of, or was a party to, the fraudulent intent of John P. Cordell. She was his wife, and by some means had received a conveyance of real estate in exchange for that owned by her husband, and conveyed by him to Elizabeth Cordell. The circumstances connected with the transactions were somewhat unusual, and, in the absence of any explanation, at least liable to suspicion. While then the judge stated there was no direct evidence upon that point, he left the whole matter to the jury as a question of fact. There was no legal error in this, and it was quite as favorable a disposition of the point presented as the defendants had a right to require.

In conclusion, I am satisfied that no error was committed by the judge in disposing of the various questions raised upon the trial, and I am not prepared to say that there is any good reason for setting aside the verdict of the jury. A charge of fraud in a case like this, must depend very much upon the incidents surrounding it. Fraud is rarely perpetrated

openly and in broad day light. It is committed in secret and privately, and usually hedged in and surrounded by all the guards which can be invoked to prevent discovery and exposure. Its operations are frequently circuitous and difficult of detection. The proof of it is very seldom positive and direct, but is dependent upon very many little circumstances and conclusions to be drawn from the general aspects of the case. Even an absence of evidence which is supposed to be within the reach of the party charged with the fraudulent act, may sometimes induce unfavorable inferences, and exercise an important influence upon the final determination of the question. While the plaintiff must make out a case by legal proof, he has also a right to call to his aid any failure of the defendant to explain, when in his power to do so, what would seem to be tainted with doubt and distrust. And these considerations appear to have been entertained in the case at bar, and as there was no unfairness, and nothing transpired upon the trial which would authorize this court to disturb the judgment, it must be affirmed.

[ABLANY GENERAL TERM, December 5, 1864. *Peckham, Miller* and *Ingalls,* Justices.]