## GAGE *vs.* PARKER.

Where a person selling cattle at a fixed price per pound, the weight to be after-
wards ascertained, *voluntarily relinquishes his right to have them weighed*,
and agrees to accept a sum in gross, rather than be at the trouble of weighing,
and putting the purchaser to inconvenience and expense, or delay him in get-
ting the property to market; and the sum thus agreed on is paid to him; he
cannot afterwards—in the absence of any fraud on the part of the purchaser—
maintain an action against him, to recover the difference between the gross
sum received, and the value of the cattle by weight, at the price originally
stipulated.

And even though the purchaser has, before the making of the second agreement,
ascertained the exact weight of the cattle, in the absence of the vendor, and
conceals from him the fact that the cattle have been weighed, that will not
constitute a fraud for which an action will lie, so long as the purchaser neither
says, nor does, any thing to mislead or deceive the vendor in respect to the
actual weight.

Although fraud is a question of fact for a jury, (or a court where there is no jury,)
to determine, yet it is a question of law whether the evidence before such court,
or jury, tends, in any respect, to make out fraud. And if fraud is found, as
a conclusion of fact, when there is no evidence tending to such conclusion, it
is the duty of the court to set the finding aside.

THIS was an action upon contract, to recover the price of
thirteen head of cattle, at $3\frac{1}{4}$ cents per pound, live weight,
the cattle to be weighed at Canandaigua. The cattle were sold
at Potter, Yates county, and were to be driven to Canandaigua
by the defendant on the day of sale, and the next morning the
plaintiff was to meet him there and the cattle were to be weighed
and paid for at the price aforesaid. Before the plaintiff arrived,
next morning, the cattle were weighed by a Mr. Twist. But it
did not appear that the defendant knew the weight. When the
plaintiff came he told the defendant he might have the cattle at
$489 in gross, without weighing ; the defendant accepted this
offer and paid the plaintiff that sum. The plaintiff claimed
that the circumstances in the case showed fraud on the part of
the defendant, sufficient to avoid the contract for $489, and that
as the cattle by weight would have brought $12 more than that
sum, he was entitled to the difference. The cause was com-
menced before a justice of the peace, and was tried before him,
without a jury. The defendant, in his answer, alleged that the

cattle had been paid for; that a second bargain was made for them, between the parties, at Canandaigua, after the cattle were driven there, for $489 in gross, which sum was paid by the defendant. The plaintiff replied that that agreement was made under the impression that the cattle had not been weighed, and in view of representations made by the defendant that there was not time, after the plaintiff arrived, to weigh the cattle, he, the defendant, having started them on the way to the cars at that time, and saying it would be a great damage to him to take them back and weigh them; the defendant then knowing they had been weighed, and their true weight, which facts the plaintiff did not know, by reason of which the plaintiff alleged that the agreement was void.

The justice rendered a judgment in favor of the plaintiff, against the defendant, for $12 damages, besides costs. On appeal to the county court of Ontario county, the judgment was affirmed; and the defendant appealed to this court.

*E. L. Pottle*, for the appellant.

*Daniel Morris*, for the respondent.

*By the Court*, JOHNSON, J. The action is brought upon the first contract between the parties, to recover a balance of the purchase price of the cattle, alleged to be still due, according to the price fixed by that agreement. The cattle were in fact sold and delivered upon a new agreement, and at a different price, which was fully paid, upon the delivery, and the entire new agreement completely executed between the parties. It is alleged on the part of the plaintiff, that he was induced to abandon the first contract, and enter into the second, which was less favorable, by reason of a fraud practiced by the defendant. And the theory of the action is, that such fraud put it in the power of the plaintiff to declare the second contract void, and the first still in force, and thus bind the defendant, the same as though the cattle had been delivered, and the amount which was paid had been paid upon the first contract.

Gage *v.* Parker.

Admitting that the defendant, in making the new contract, practiced such a fraud upon the plaintiff as to constitute a cause of action, there must still be found, I apprehend, great difficulty in maintaining this action. The action proceeds upon the ground that the defendant acquired a valid title to the cattle, and is still indebted for a portion of the purchase money, and necessarily affirms the validity of the sale, under which such title was acquired. Now it is indisputable that the cattle were delivered under the second agreement, and the defendant, if he acquired any title, must have acquired it under that agreement. That was the only agreement which the parties undertook to perform, and it was fully executed on both sides. The effect of rescinding that contract, if the plaintiff had the right to rescind for the fraud, after its complete performance on both sides, would be to restore the parties to their rights as they stood when it was entered into, and to re-invest the plaintiff with his title to the animals delivered under it. He could not rescind in part and affirm in part. He might elect to rescind, but he could not, without the consent of the defendant, by such rescission, make the performance of the contract thus rescinded, operative as the performance, in whole or in part, of the first contract, which the parties agreed to abandon. Nothing was ever delivered upon the first contract. It was necessarily abandoned, by entering into the new agreement in reference to the same property. The defendant never acquired any right or title to the animals, under the first agreement, and it is impossible that any thing can be due upon it. The fraud in making the second contract would not render such contract void *per se.* It would place it in the power of the plaintiff to affirm it, and bring his action directly upon the deceit, or to rescind it, and recover the property, or its value, at his election. But it would remain a valid contract, binding upon both parties, as long as the right of rescission was not exercised. And that right, when exercised, would not draw after it, to the plaintiff, power to elect that his delivery of the property under the contract thus rescinded, should be regarded as a delivery under the other contract, and the defendant held liable as for an acceptance under such other con-

tract. I see no principle, therefore, upon which this action can be maintained. Conceding, however, that it may be in case the fraud is established, for the purposes of this case, I am clearly of the opinion, that there is no foundation for the action. There was clearly no fraud, on the part of the defendant, for which any action will lie, or which would authorize the plaintiff to rescind the contract he entered into voluntarily, and which was fully performed on both sides.

It is certainly true that the defendant caused the animals to be weighed in the plaintiff's absence, but it is not proved that he knew, or had been informed what the weight was, when the new contract was entered into. On the contrary, the proof is that the bill of the weight was not delivered to him until half an hour after the cattle had been delivered, and the price paid, under the new agreement. But suppose he had ascertained the exact amount the animals weighed, when the plaintiff came there, and had wholly concealed from the plaintiff the fact that he had weighed them for his own satisfaction; that would not constitute a fraud for which an action would lie, so long as he neither said, nor did, any thing to mislead, or deceive the plaintiff as to what the actual weight was. (*Bench* v. *Shelden,* 14 *Barb.* 66, *and cases there cited.*) The material fact was, not the weighing, but the aggregate weight of all the animals, as ascertained by the weighing, because the amount to be paid was to be governed by the ascertained weight.

That the defendant did in fact tell the plaintiff he had weighed the cattle, on his arrival at Canandaigua, cannot be denied, because the plaintiff was called as a witness by the defendant, and testified to the fact. It is true he says the defendant said it in a laughing manner, and that he replied to it, that he should have liked to see them weighed. But he does not say, in his evidence, that he did not credit the assertion, or that he was induced to believe the contrary, from the manner in which it was made. For a time he insisted that he would have them weighed before he would be satisfied, and it is argued that the inference from this is that he did not suppose they had been weighed. But the legitimate inference is, that he was not satisfied to take

Gage *v.* Parker.

the defendant's weighing, in his absence, and wanted to weigh them, or see them weighed, himself, as was clearly his right. It is perfectly apparent, however, that whatever the defendant said, or omitted to say, on the subject of his having had the animals weighed, did not in the least influence the plaintiff, in changing his mind, and giving up the first contract, and fixing a price in gross, without reference to weight. He testified on the trial, that he told the defendant he thought the price he had agreed to take was less than they would come to by weight. The defendant was not asked what the weight was, and said nothing on the subject. He expressed no opinion as to what they would be likely to weigh, and neither said nor did any thing to lead the plaintiff to think or believe they might weigh less than the actual weight. His objection to the plaintiff's weighing was the want of sufficient time, and there is nothing to show that this objection was not well founded. The plaintiff was probably persuaded, but he was not deceived, by it. For aught that appears, he knew, or might have known, as well as the defendant, at what time the cars were expected to start, and how long it would probably take to separate his cattle from the others, and have them weighed, and placed upon the cars. It does not appear even that the defendant was mistaken in his opinion, in this respect; much less that he was guilty of deceit. The cars did not, it seems, in fact, start until after the cattle had been put on board an hour or two; but whether it would have taken more or less time to have separated and weighed the animals, or whether the cars started as soon as was expected, does not appear.

It is true, as claimed on behalf of the plaintiff, that fraud is a question of fact, for a jury, or a court where there is no jury, to determine. But it is a question of law, whether the evidence before such court, or jury, tends, in any respect, to make out fraud. And if fraud is found, as a conclusion of fact, where there is no evidence tending to such conclusion, it is the duty of the court to set the finding aside. This appears to me a very plain case, where the seller voluntarily relinquished a clear right, of determining the value of his property, by weight,

and agreed upon another price, rather than be at the trouble of weighing, and putting the other party to the inconvenience and expense of delay, in getting the property to market. To hold that he was deceived, would be to infer fraud on the part of the purchaser, merely because the latter knew, or was in a situation to know, when he accepted the seller's offer, that it was less than the price would be by weight. It would make the purchaser the guardian of the seller's interest, instead of his own, and reverse the rule *caveat emptor.*

The judgment is clearly wrong, and must be reversed.

[MONROE GENERAL TERM, September 7, 1857. *Johnson, Welles* and *T. R. Strong,* Justices.]