PIERRE FRANCOIS RENAUD AND OTHERS *v.* EDWIN PECK AND
OTHERS.

A purchaser of goods is not bound to return them, in order to entitle him to damages
for a breach of warranty. He may claim damages in an action against him for
the price, and his defence will not be barred by the continued possession of the
goods; by delay in giving notice to the vender; nor even by omitting altogether
to give such notice, and using or selling the property.

Where sufficient and competent proof, on a question of value, was before the jury,
their verdict will not be set aside for an error of the judge in allowing witnesses
to state their opinions on the subject, unless there are strong probable grounds
to believe that the merits of the question were not fully and fairly tried, and that
injustice has been done.

Proof of the amount for which goods sell at auction, is admissible as a circumstance
to be considered on the question of value; but it is neither conclusive, nor in gen-
eral sufficient, without other proof.

In an action for the price of ribbons, where defendants relied on the fact that the
goods were of an unmerchantable quality: *Held*, that it was not necessary that
defendants should have unrolled each of the cartons on which the ribbons were
put up, to ascertain the character of every yard; but it was sufficient that they
unrolled a number of cartons, and that all those examined were found to be un-
merchantable.

APPEAL, by plaintiffs, from a judgment upon a verdict. The
action was brought to recover for goods sold and delivered. It
appeared that, on October 3d, 1854, the defendants ordered from
the plaintiffs seventy-six cartons of black velvet ribbons, to be
procured by plaintiffs from France. The written memorandum,
given by defendants when ordering the goods, specified the quan-
tity and description of ribbons desired, but was silent as to qual-
ity. It appeared, however, that in the oral negotiations attending
the order, it was agreed that the ribbons "were to be of good
quality." The plaintiffs undertook that "they should come out
first rate goods—equal to steamboat brand."

On the arrival of the goods, they were delivered to the defend-
ants, who inspected them, in the usual way, by opening the cases
and examining the exterior of the cartons as they laid in the

boxes. They appeared to be of the quality ordered, which was a ribbon with a velvet figure woven through it. The defendants sold them in the usual manner to their customers, but they were afterwards returned as unmerchantable, and as fraudulently manufactured, and put up so as to deceive a purchaser. The deception consisted in manufacturing the ribbons so that about two yards of the outside rolls on each carton were of the proper quality, while the residue was but plain ribbon, devoid of any velvet or figure, and comparatively worthless. This was the case with nearly every carton examined, and very many of them were unrolled, but not all. Sufficient, however, was inspected in this way to show that the entire quantity was fraudulently manufactured, and that the goods were not of the quality ordered, and were unmerchantable.

It was not shown, nor was it claimed, that the plaintiffs knew of this fraud, or knew the manufacturer; indeed, it appeared that they had purchased them in Europe, upon an inspection of the exterior, and without suspicion of the deception. Apart from the difficulty of unrolling and rerolling each carton, it seemed that the handling of the ribbon, in thus examining it, would necessarily deface it, and render it less valuable, and in some degree unmarketable.

The principal questions upon the appeal arose upon the admissions of evidence respecting the value and marketable quality of the ribbons, and are fully set out in the opinion of the court. Exceptions also were taken to the charge of the judge, but it is unnecessary to refer to them here, as the opinion sufficiently specifies their nature.

*C. Bainbridge Smith*, for the appellants.

I. Regarding the contract as an executory one, the plaintiffs having sold and delivered the goods on the 23d of February, 1857; and the defendants, having retained them until the latter part of the month of May following, without offering to return them, or giving notice of their defect, must be presumed as having waived all objections to the goods, and acquiesced in their quality. *Har-*

*gous* v. *Stone*, 1 Seld. R. 73–86 ; *Ely* v. *O'Leary*, 1 E. D. Smith R. 355 ; *Muller* v. *Eno*, 3 Duer R. 421 ; *Howard* v. *Hovey*, 23 Wend. R. 350 ; *Hart* v. *Wright*, 17 Id. 277 ; *Dickson* v. *Jordan*, 11 Ired. R. 166 ; *Grimaldi* v. *White*, 4 Esp. 95 ; *Milner* v. *Tucker*, 1 Car. & P. 15, (11 E. C. L. R. 300); *Street* v. *Blay*, 2 B. & Ald. 456, (22 E. C. L. R. 122) ; 2 Kent's Com. 480 ; Chitty on Cont. (8th Am. ed.) 405. 1. The defendants had a reasonable time, after the sale and delivery of the goods, to examine and return them ; and the question, what was a reasonable time for them to do so, is one of law. *Ely* v. *O'Leary, supra ;* 2 Parsons on Cont. 190 ; *Kingsley* v. *Wallis*, 14 Maine R. 57 ; *Holbrook* v. *Burt*, 22 Pick. R. 546 ; *Rogan* v. *Gunther*, 11 Gill & J. 472. (*a*) The defect could have been discovered by the unrolling of a single piece, and that would not have been inconvenient ; nor would the inspection of all have been impracticable ; but in such case an examination is not dispensed with, but applies only " where goods are sold before their arrival or landing." *Hart* v. *Wright*, 17 Wend. 276. (*b*) The defendants should have, immediately upon receiving the goods, examined them, and not waited three months, and then only discover their inferiority after they had sold about half of them. The time is unreasonable. *Hargous* v. *Stone*, 1 Seld. 73–86–92, and cases above cited. 2. The court charged the jury that " the principal point in this case, therefore, is, whether the defendants were concluded by the length of time that had elapsed before they discovered the defect, or by their not offering to return all that they had received." The judge said that, in his view of the law, they were not—to which the plaintiffs excepted. This ruling is in direct conflict with all the authorities upon the subject. *Hargous* v. *Stone*, 1 Seld. 73–92 ; *Ely* v. *O'Leary*, 2 E. D. Smith, 355, and cases cited above. (*a*) As to what constitutes "reasonable time," in law, for a vendee to examine goods sold and delivered to him under an executory contract, see *Hargous* v. *Stone, supra*. (*b*) No breach of warranty is set up, nor fraud imputed to the plaintiffs ; and, if both were alleged and proved, they would only apply to latent, not patent, defects. *Schuyler* v. *Russ*, 2 Cai. 202 ; *Wright* v. *Hart*, 18 Wend. 449 ; *Hargous* v. *Stone*, 1

Seld. 86; *Chanton* v. *Hopkins*, 4 M. & W. 399; *Howard* v. *Hoey*, 23 Wend. 350; *Voorhees* v. *Earl*, 2 Hill, 288.

II. Between the time the goods were ordered, and a reasonable time to examine them after they were delivered, the contract was executory; but, when the "reasonable time" elapsed, the contract was executed. "An executed contract is one in which the object of the contract is performed." *Fletcher* v. *Peck*, 6 Cranch, 136; Story on Cont., § 15; cases above cited. 1. The defendants' having had the goods in their possession for three months, and having sold a large portion of them, is conclusive evidence of acquiescence and acceptance. 2. If the contract was executed, and not executory, it is immaterial what the goods or their value were. The rule *caveat emptor* applies. *Seixas* v. *Wood*, 2 Cai. R. 48; *Swett* v. *Colgate*, 20 J. R. 196; *Welsh* v. *Carter*, 1 Wend. 185–189, and cases above cited.

III. The defendants failed to prove the defence, as alleged in their answer. The defence set up is, that on or about the 23d of December, 1857, the plaintiffs sent to the defendants a case of velvet ribbons, alleging the same to be in fulfilment of an order previously given; that the defendants, within a reasonable time thereafter, upon inspection of said velvet ribbons, discovered that the same were of a very inferior quality and material; that the defendants, immediately upon ascertaining the said quality and condition of said case of velvet ribbons, rescinded their contract to purchase, and offered to return said ribbons to the plaintiffs. 1. The allegation of the defendants, rescinding the contract, is properly set up; but there can be no rescission of a contract unless the parties can be placed *in statu quo*. *Voorhees* v. *Earl*, 2 Hill, 288–297; *Fisher* v. *Conant*, 3 E. D. Smith, 199; *Kimball* v. *Cunningham*, 4 Mass. 50.

IV. It was in the power of the defendants to show what damages they sustained, and, not doing so, the maxim *omnia præsumuntur contra spoliatarum* applies. *Armory* v. *Delamere*, 1 Strange, 504; 1 Smith's L. C. 151; *Clunnes* v. *Perry*, 1 Camp. 8, and n.; *Bell* v. *Frankis*, 4 M. & Gr. 446; 43 E. C. L. R. 234; *Lobb* v. *Stanley*, 5 Q. R. 574; 48 E. C. L. R. 572.

*Shea & Richardson*, for the respondents.

I. This was an executory contract, and the rule *"caveat emptor"* has no application. *Howard* v. *Hoey*, 23 Wend. 351–2 ; *Chanton* v. *Hopkins*, 4 M. & W. 399; Addison on Cont. 228; *Muller* v. *Eno*, 14 N. Y. R. (4 Kernan) 610.

II. A gross and deliberate fraud was practiced in the manufacture of the ribbons, and the purchaser, in such case, provided he act without unreasonable delay after discovering the fraud, has the right to rescind, and return the goods ; or, in an action for the price, he can give in evidence the real market value of the article in reduction of the plaintiff's claim. *Muller* v. *Eno*, 14 N. Y. R. (4 Kernan) 598, and authorities cited under the 4th point.

III. The notice to the plaintiffs, and offer to return, was sufficient in time, and as to the amount of goods.  1. It was done the moment the fraud practiced was discovered.  2. The defendants offered to do all that the nature of the case permitted, under the circumstances.

IV. The measure of damages, in such case, is, the difference between the value of the goods, if they had corresponded with the order, and their actual value. *Voorhees* v. *Earl*, 2 Hill, 288 ; *Cary* v. *Gruman*, 4 Id. 625 ; *Muller* v. *Eno*, cited above, 604 ; Addison on Cont. 265–6 ; *Howard* v. *Hoey*, 23 Wend. 353. 1. Whether "reclamations" had been made upon the defendants by the purchasers, or not; and the prices or circumstances attending the sales, by the defendants, to third persons; are not proper matters of inquiry in this action. *Muller* v. *Eno, supra*, and cases cited.  2. The defendants offered to show what proportion of the original cost was realized by the sale of the goods.  The plaintiffs objected.  4 Denio's Rep. 292.

V. The amount of the verdict is not less than the evidence justifies.  The plaintiffs offered no evidence as to the value of the goods, but merely that the market price of velvet ribbons (and other goods) had fallen about one-third since these goods were sent to the defendants; and this was done with the view

of having an additional reason why they did not take back the goods.

By the Court, BRADY, J.—There was evidence given, on the part of the defendants, tending to prove that the ribbons ordered by the defendants were to be of "good quality," that "they were to come out first rate goods," "equal to steamboat brand;" and, upon the questions, whether that was the agreement, and whether the ribbons delivered corresponded with the order given, the jury have found for the defendants. Upon the trial, it was insisted that if the defendants wished to avail themselves of any breach of warranty, they should have returned the ribbons, or have offered to do so, within a reasonable time after their delivery; and the cause seems to have been tried on the theory that, by law, such duty was imposed upon the defendants. The plaintiffs have no reason to complain of any rulings upon that theory. It was favorable to them, but it is not the law applicable to such contracts as that proved herein, and the rights that flow from them. In this case, no fraud was charged upon the plaintiffs personally, they not having manufactured the goods; and in cases where there is no fraud, and no agreement that the goods may be returned, it is doubtful whether, on account of the breach of an express warranty, the purchaser has a right to rescind the sale and return the goods. But, if the right does exist, arising upon warranties, express or implied, it is well settled that the purchaser is not bound to exercise it. He may claim damages in an action against him for the price, and his defence will not be barred by the continued possession of the goods; by circumstances of delay in giving notice to the vendor; nor even by omitting altogether to give such notice, and using or selling the property. *Muller* v. *Eno*, 4 Kernan, 602; *Waring* v. *Mason*, 18 Wend. 425; *Boorman* v. *Johnson*, 12 Id. 566.

The defendants were therefore entitled to recoup the damages sustained by them, on account of the difference in quality between the article ordered and that delivered. The doctrine of *caveat emptor* has no application to a case like this. The agreement

was executory. The goods were not within the view of the buyer, but were to be forwarded, (*Howard* v. *Hoey*, 23 Wend. 351–2; Story on Sales, §§ 369, 371; 2 Kent's Comm. 480; *Muller* v. *Eno, supra,* 610); and the right of the defendants to damages cannot be defeated by the application of that principle of law. The defence set up having, then, been well interposed, and the objections to its general character being disposed of, it remains to be determined whether, for certain exceptions taken on the trial, a new trial must be ordered.

The first exception to which our attention was called, was taken to the following question: "What effect would it have had upon the saleableness of the ribbons to have unrolled each carton?" The evidence proposed to be elicited by this question, and given by the witness, was wholly immaterial. The defendants were justified in unrolling some of the cartons, but they were not compelled to do it; and there was therefore no element against their defence which they were thus obliged to anticipate. But, as we shall see hereafter, the admission of this evidence, though improper, furnishes no reason for granting a new trial. The plaintiffs also duly excepted to the decision of the judge in allowing the following questions to be put and answered, namely: "What were those goods worth, to sell at that period, to a person knowing what they were?" "What, in your opinion, would they have brought in open market, with a knowledge of their condition?" "What would they be worth to any person, to use?" It may be said, I think, with great propriety, that the goods, about which the opinion of the witness was thus asked, were not a merchantable article, having been manufactured out of the ordinary mode, and with a view to practice a fraud upon the buyer, whoever he might be; that it was not possible to establish a general market value of such fabrics, and that their value necessarily depended upon circumstances about which the opinion of a dealer was incompetent and unreliable. I think, however, that the testimony was immaterial. The first and second inquiries tended to show that the ribbons would be worth nothing; and the answer to the third inquiry was that "they would be worth about twenty-five

per cent. of the cost price." There was, however, abundant evidence in the case, on the subject of value, elicited by the question put to the witness Benjamin, as follows: "How much less were those goods worth, than they would have been if they had been a first rate merchantable article?" And this question embraced the measure of damages, which is the difference between the value of the goods if they had corresponded with the warranty, and their actual value. Under such a state of facts, to induce the granting of a new trial for an error of the judge, there should be strong probable grounds to believe that the merits have not been fully and fairly tried, and that injustice has been done. *Crary* v. *Sprague & Carew*, 12 Wend. 41; *Mitchell* v. *Hinman*, 8 Wend. 672; *De Peyster* v. *Col. Ins. Co.*, 2 Caines, 90; *Hunt* v. *Burrill et al.*, 5 John. 138; *Supervisors of Chenango* v. *Birdsall*, 4 Wend. 458; *Clement* v. *Brooks*, 13 New Hamp. 32; *Prince* v. *Shepard*, 9 Pick. 176. In addition to this, it may be said that no exception appears to have been taken to the statement of the rule of damages, and that the plaintiffs offered no proof on the subject of value. The case does not, on the whole evidence, present strong grounds to believe that the cause was not fairly disposed of on the merits, so far as the plaintiff is concerned, or that injustice has been done. Nor does it appear that the opinion of the witness Peck, though improperly admitted, either misled or improperly influenced the jury. The plaintiffs, therefore, are not within the doctrine of the rule stated, and are not entitled to relief for the cause assigned. *Farmer's and Manuf. Bank* v. *Whinfield*, 24 Wend. 419.

The plaintiffs also objected to the proof, by the witness Peck, of what some of the ribbons brought upon a sale at auction; and, the proof being received, excepted to the ruling of the judge in that respect. Proof of the amount for which goods sell at auction, is, as I understand the rule, admissible as a circumstance to be considered on the question of value; but that it is neither conclusive, nor probably sufficient, without other evidence. There being other evidence in this case, the exception is not available, nor were any of those already mentioned; and this brings us to the consideration of the exceptions to the charge.

Renaud v. Peck.

The first exception is to that part of the charge in which the judge asserted "that it was not necessary for the vendees to unroll every carton, to ascertain what was the character of every yard of ribbon." It has already been stated that the defendants were not bound to perform that ceremony. We were not furnished, upon the argument, with any principle or authority to the contrary. The defendants, if they chose to rely on the assumed fact that the cartons not unrolled corresponded with those unrolled, might do so. It affected the question of evidence, but their relations to the plaintiffs imposed no such duty as that suggested by the exception. The charge was therefore, in this respect, correct.

The next exception is "to the ruling distinguishing this case from any other sale of goods, upon the ground of the fraud practiced in the fabrication of the article." The exception is too general, and cannot be considered.

The plaintiffs also excepted to the statement of the judge that "$1,500 worth of the ribbons, it would appear from the statement of Mr. Peck, were sold at private sale, on which the defendants realized fifty cents on the dollar." The exception was not well taken. The judge did not incorrectly state the testimony of Mr. Peck. It will appear, from the statement of Mr. Peck, that he so said; and of that statement, the jury were to judge for themselves. At best, it was but saying to the jury, "It would seem, from the testimony of Mr. Peck, that $1,500 were sold," &c. This form of comment upon evidence has never been the subject of exception, and there is no authority to sustain an exception to it.

The remaining exceptions all relate to the theory heretofore commented on, by which it was assumed that the defendant could not retain the ribbons and recoup his damages. The charge was more favorable to the plaintiff, in this respect, than was required by the rules of law applicable to such cases, and the plaintiff has no cause to complain.

Judgment affirmed.