# N. Y. COMMON PLEAS.

RUDOLPH G. SALOMON agt. DAVID MORAL and JEANNETTE
MORAL.

*Fraudulent conveyance — Action to set aside — Appeal — Law and fact.*

Where defendant, who was insolvent, being apprehensive of the recovery
of a judgment against him by plaintiff, in an action then on trial, and
with intent on his part to hinder, delay and defraud his creditors, exe-
cuted a conveyance of two certain pieces of property to his son, for the
nominal consideration of $1,500, but without actual consideration, and
the son immediately conveyed them to his mother, the wife of the defend-
ant, without actual consideration, but for the same nominal consideration:

*Held*, that the conveyances were fraudulent and void as to the creditors of
defendant then existing, and especially as to plaintiff and his judgment,
which was recovered about one month after such conveyances.

That the wife of defendant had notice of her husband's fraudulent intent,
may be inferred from the circumstances of the case (*See facts in opinion
of* DALY, J.).

Where a debtor, with an intention of defrauding his creditors, executes a
conveyance of his property without any valuable consideration being
paid by the grantee, the conveyance is void as against such creditors,
although the grantee was not privy to the fraud.

Where the wife had notice of the fraudulent intent of her husband in
conveying the premises to her, and being therefore a party to the fraud,
although her husband was actually indebted to her at the time, she is
not entitled to a lien on the premises conveyed for the amount of such
debt.

Although a review of both the law and the facts of a case tried by a judge
or referee may be had at general term, yet, if no error be shown, the
findings of fact, like the verdict of a jury, should be deemed conclusive.

*General Term, June,* 1877.

THE following opinion was rendered at special term, Janu-
ary, 1877, which, together with the findings of fact and con-
clusions of law, contain a complete statement of the case:

Salomon agt. Moral.

DALY, *J.* — A large portion of the money used by the defendant David Moral, in the investments which he commenced to make in real estate in 1873, finally resulting in the purchase of the houses and lots in Fifty-first street (the subject of this action) in 1875, came from the sale of furniture in, and a mortgage executed upon, the house and lot 104 Lexington avenue, which house and lot stood in the name of his wife, the defendant Mrs. Jeannette Moral. This house and lot, 104 Lexington avenue, was bought in 1863 by David Moral, with money of his own, and the deed taken in his wife's name as a return for or repayment to her of certain moneys which she brought to him on their marriage in 1848. At the time he bought the house and lot in her name he was not in debt, and, as a gift even, the transaction cannot be questioned. In 1873, the house was leased and the furniture sold. He collected the rents, amounting to $3,000 a year, for four years and disbursed it. He received $4,000 upon a sale of the furniture (which, he says, was hers, *i. e.*, bought by him for her) and deposited it in the United States Trust Company in his own name. In March, 1873, he bought with that $4,000 real estate in Fifty-seventh street, in conjunction with one Ellert, each investing $4,000. The deed was taken in his name and not in his wife's. In September, 1873, the property was sold and he realized $5,500 cash from it, of which he deposited $4,600 in his own name in the trust company and afterwards with Greenbaum Bros., bankers. In April, 1874, he took that money, and, with $800 more, bought in his own name three mortgages on three houses and lots in Fifty-first street. In August, 1875, prior mortgages on those houses and lots were foreclosed and he bought them in in his own name. In order to raise more money to effect the purchase, his wife and he executed a mortgage for $4,500 on the Lexington avenue property, of which he used $2,493 in securing the Fifty-first street property. In October, 1875, he sold one of the houses and lots in Fifty-first street for $10,750, realizing $3,602.91 cash, of which he used $2,000 to

make a payment on account of the mortgage above referred to on the Lexington avenue property.

In June, 1876, when he was apprehensive of the recovery against him by Salomon, the plaintiff, of a judgment in an action then on trial, he conveyed the remaining two houses and lots in Fifty-first street to his son for the nominal consideration of $1,500, but without actual consideration, and the son immediately conveyed them to the defendant Jeannette Moral, his mother, the wife of David Moral, without actual consideration but for the same nominal consideration of $1,500.

This action is brought to have these last-mentioned conveyances set aside and declared fraudulent and void as against this plaintiff and other creditors of David Moral who may join in the action.

So far as the evidence enables me to trace the sources of the moneys invested by David Moral in these two houses and lots in Fifty-first street, it would seem that $6,493 of it came from the sale or mortgaging of property to which Mrs. Moral had a good title, that is, $4,000 invested by David in the Fifty-seventh street property in 1873 was the proceeds of the sale of his wife's furniture, and $2,493 used by him to secure the three houses and lots on Fifty-first street upon the foreclosure in 1875 was part of the proceeds of a mortgage given at that time on his wife's house in Lexington avenue. But, of this $6,493, $2,000 has been paid back to her, because, when one of the Fifty-first street houses was sold to Arnold in 1875, David Moral received $3,602.91 cash and used $2,000 of it to reduce the mortgage, to which I have just referred, given a short time before on his wife's house in Lexington avenue. None of the moneys collected by David Moral as rent of his wife's house, and no other proceeds of any property belonging to her, are traced into the purchase-money of the two houses and lots on Fifty-first street, the subject of this action, and her interest therein, if she be entitled to any,

Salomon agt. Moral.

and if the property do not belong to her, a question I shall now discuss, amounts at most to $4,493.

It is claimed by defendants that in using his wife's money to purchase the Fifty-seventh street property, in selling that and investing in the bonds and mortgages on Fifty-first street, in buying the latter property upon foreclosure and in receiving, depositing and disbursing the moneys received and paid out during these successive investments, the defendant David Moral was acting as agent of his wife, and that the titles, though taken in his name, were hers, she being ignorant of his acts in that particular.

This claim of agency rests upon no stronger foundation than the oath of Mr. and Mrs. Moral, and contradicts all the records and their own written and solemn declarations during the periods from 1871 to the day of trial. That oath is made at a time when it is of the greatest importance to them to make the claim, while the declarations I have mentioned were made at a time when there was no temptation to falsify on this important point. David Moral deposited and drew out these moneys from 1871 to 1876, in his own name, and took and gave every deed in his own name, his wife joining in such deeds and releasing her dower. In a mortgage executed by them on this property on Fifty-first street and on the Lexington avenue property in 1875, to secure certain indebtedness of the firm of Salomon & Moral, of which their son was a member, Mrs. Moral covenants to charge her separate property, and expressly designates the Lexington avenue property as her separate estate.

In a written declaration, made in the same matter at about the same time, David Moral, to show his solvency, declares himself to be worth $25,000 exclusive of the real estate which I (he) own in Fifty-first street and Lexington avenue. Defendants now declare that all the investments made were so made after consultation between them, and Mrs. Moral approved or directed them all, her husband acting according to her instructions, but that she was wholly unaware that he had taken

deeds to himself instead of to her; that this incorrect and unauthorized act was communicated to her by her son in June last, and she immediately demanded of her husband that he transfer the titles to her. He did so in time to avoid levy under the plaintiff's execution. So far as David Moral and his son and grantee are concerned, they hastened to make the conveyances to Mrs. Moral, in order to avoid trouble apprehended from plaintiff's judgment. As for Mrs. Moral, she only knew from conversations of theirs that there was trouble, but her demand of the conveyances was induced simply by a desire to have her own, the proceeds of her money; such is their testimony.

The whole evidence establishes in my mind that Mrs. Moral intrusted her husband with whatever money he got out of the Lexington avenue house and furniture to use as his own, and that at most he became her debtor only for the amount. This view is consistent with their financial dealings since their marriage. She brought him a dowry of $5,000 in 1848, which he used as his own in business. In 1863, he repays it by buying the Lexington avenue property in her name; in 1871, he concludes to speculate with the proceeds of the furniture, and with that and other funds of his own comes on an active and successful business as real estate agent, until it results in his ownership of the property now in question. The prospect of a heavy judgment against him induces the pretense that this property is not, in fact, his own, and that he has been acting all along as the agent of his wife. I cannot but believe this to be an after-thought, and that the conveyances to his wife were made to hinder, delay and defraud his creditors, and that Mrs. Moral had notice of his intention. But there is no evidence that Mrs. Moral intended any of her moneys used by her husband as a gift, nor other than a loan, and in declaring the conveyances void as against his creditors, it is equitable to declare a lien upon the premises in her favor to the extent of the sum of $4,328.66 of her money, with which the premises were purchased, and interest from June,

Salomon agt. Moral.

1876 ; the above sum representing two-thirds of the amount ($6,493) originally invested in the three Fifty-first street lots. Upon a sale in this action her lien should be first satisfied. Costs to plaintiff.

Judgment accordingly.

This cause having been tried before me, I make and file the following findings of fact :

I. That, on the 26th day of July, 1876, the plaintiff recovered a judgment in this court against the defendant, David Moral, for the sum of $3,878.68, which said judgment was on said day duly docketed in the office of the clerk of the city and county of New York.

II. That, on the 21st day of August, 1876, an execution was issued upon said judgment to the sheriff of the city and county of New York, where said defendant then resided, and that the said execution has been returned wholly unsatisfied.

III. That the said judgment remains wholly unpaid.

IV. That, on the 22d day of June, 1876, the defendant, David Moral, being the owner of the real estate hereinafter described by deeds bearing date on that day, and recorded in the office of the register of the city and county of New York, in liber 1,372 of conveyances, pages 257 and 260, on the 27th day of June, 1876, conveyed to one Bernhard Moral, his son, the following described premises, viz. :

All those two certain lots, pieces or parcels of land, with the buildings and improvements thereon erected, situate, lying and being in the city of New York, taken together bounded and described as follows : Beginning at a point on the northerly side of Fifty-first street distant two hundred and thirty-five feet eight inches easterly from the north-easterly corner of Fifty-first street and First avenue, running thence northerly parallel with First avenue and partly through the center of a party-wall one hundred feet five inches ; thence easterly and parallel with Fifty-first street thirty-three feet four inches ; thence southerly parallel with First avenue one hundred feet

five inches to the northerly side of Fifty-first street, and thence westerly along the northerly side of Fifty-first street thirty-three feet four inches to the point or place of beginning.

V. That the said Bernhard Moral, by deeds bearing date June 26, 1876, and recorded in said register's office in liber 1382 of conveyances, pages 374 and 376, on the 29th day of June, 1876, conveyed the same premises to his mother, the defendant Jeannette Moral, the wife of the defendant David Moral.

VI. That, said conveyances were made without any consideration, although each of said deeds purported to have been made for the consideration of the sum of $1,500.

VII. That, at the time of the making of said conveyances, the said David Moral was wholly insolvent, and that said conveyances were made with intent to prevent the judgment recovered by the plaintiff against the defendant David Moral from becoming a lien upon the property thereby conveyed, and with intent, on the part of David Moral, to hinder, delay and defraud his creditors, and that the defendant Jeannette Moral had notice of such intention at the time.

VIII. That, at the time of the making of said conveyances, the defendant David Moral was indebted to the defendant Jeannette Moral, his wife, in the sum of $4,328.66 for moneys previously loaned by her to him. And I find as conclusions of law :

I. That the aforesaid transfers and conveyances by said David Moral to said Bernhard Moral, and by said Bernhard Moral to said Jeannette Moral, were, and each of them are, fraudulent and void as to the creditors of the said David Moral then existing, and especially as to the plaintiff and his judgment aforesaid, and should be deemed fraudulent and void as against the said judgment.

II. That said judgment became and was a valid lien on the real property so transferred as aforesaid, situated in the city and county of New York, and such real estate was liable to

Salomon agt. Moral.

be sold thereunder the same as if such transfers and convey-ances had not been made.

III. That the plaintiff is entitled to judgment decreeing the said real estate to be sold, and that out of the proceeds of such sale, after deducting the expenses thereof, the plaintiff be paid the costs of this action hereby awarded to him, and also the amount of his judgment against the defendant David Moral, with interest thereon, or so much thereof as the purchase-money of said premises will pay of the same, and that the surplus, if any, be paid to the defendant Jeannette Moral.

J. F. DALY,

*J. C. C. P.*

The cases cited upon the settlement of findings show clearly that Mrs. Moral, having notice of the fraudulent intent of her husband in conveying.the premises to her, and being, therefore, a party to the fraud, although her husband was actually indebted to her at the time, is not entitled to a lien on the premises conveyed for the amount of such debt.

·J. F. D., *J.*

*Richard S. Newcombe,* for defendant, appellant. The learned judge erred in finding that the property in question was not, in equity, the property of Jeannette, bought with her money, and the title taken in her husband's name, with-out her assent. There was no evidence contradicting the evidence of the defendants in this regard, and it not being intrinsically improbable, the court could not disregard it. The evidence, therefore, being all one way, the finding of the learned judge was clearly wrong. Upon the evidence, and the finding as the defendant Jeannette Moral insists it should be, the law is well settled (*Holden* agt. *Burnham,* 5 *Supreme Ct. R.,* 195 ; *Safford* agt. *Hynes,* 39 *Barb.,* 625 ; *Brown* agt. *Cherry,* 57 *N. Y.,* 645 ; *Lomisbury* agt. *Purdy,* 18 *id.,* 515 ; *Ryan* agt. *Dox,* 34 *id.,* 307 ; *Sanford·* agt. *Noris,* 4 *Abb. Ct. Apps.,* 144). The paper introduced at folio 136, is no proof

Salomon agt. Moral.

that Jeannette was not the equitable owner of the Fifty-first street property, any more than it was proof that David owned, which he clearly did not (*see judge's opinion*), the Lexington avenue property. It was no evidence at all against Jeannette. The learned judge found that when the conveyances in question were made, David was justly indebted to Jeannette for money loaned in the sum of $4,328.66. Being so indebted he had a right to convey to her and she to receive property in payment. What he conveyed was no more than a just amount in value for the debt he owed. That he thereby created a preference in her favor is no objection. The law allows a debtor to make a preference (5 *Cow.*, 547; 6 *id.*, 287; 7 *id.*, 735; 11 *Wend.*, 187). The clear weight of evidence is, that Jeannette did not know of any fraudulent intent on the part of the husband, if he had any, in making the conveyance. Mere knowledge of his embarrassed condition, and that he desired to prefer her, would not invalidate the conveyance (*Bedell* agt. *Chase*, 34 *N. Y.*, 386; *Laidlow* agt. *Gilmore*, *C. P.*, 47 *How.*, 67, *aff'd. Ct. of Apps; Carpenter* agt. *Muren*, 42 *Barb.*, 300; *Auburn Ex. Bank* agt. *Fitch*, 48 *id.*, 344; *Schaffner* agt. *Reutner*, 37 *id.*, 44; *Waterbury* agt. *Sturtevant*, 18 *Wend.*, 363; *Malony* agt. *Horan*, 12 *Abb.* [*N. S.*], 289). She did not in anywise unite in any fraud; she did not even join in the deed of her husband. She simply took what she claimed was her own; or, at the most, a preference for the debt due her. The decree should be reversed.

*Blumenstiel & Ascher*, for plaintiff, respondent. Exceptions to conclusions of law, where the cause is tried by the court without a jury, are indispensable to raise any question for review (*Enos* agt. *Englehardt*, 32 *N. Y.*, 444; *Weed* agt. *N. Y. and Harlem R. R. Co.*, 29 *id.*, 616; *Russel* agt. *Duflon*, 4 *Lans.*, 399; *Walsh* agt. *Washington Marine Ins. Co.*, 32 *id.*, 427; *Renauld* agt. *Peck*, 2 *Hilt.*, 137; *Elwell* agt. *Dodge*, 33 *Barb.*, 336; *Valton* agt. *National Fund Life Ins. Co.*, 20 *N. Y.*, 32; *Newlin* agt. *Lyon*, 49 *id.*, 661; *Brewer*

agt. *Irish*, 12 *How.*, 481; *Code*, § 268; *Remedial Code*, § 1353). Whether there is evidence to support a conclusion of fact is a question of law (*Gage* agt. *Parker*, 25 *Barb.*, 141; *Mason* agt. *Lord*, 40 *id.*, 476; *Beck* agt. *Sheldon*, 48 *id.*, 365; *Putnam* agt. *Hubbell*, 42 *id.*, 106). It is admitted and proven beyond contradiction that the judgment was recovered and execution issued and returned unsatisfied, and that the judgment debtor has no property out of which to satisfy plaintiff's claim, except it be the property claimed herein to have been fraudulently conveyed. It is also established that, at the time of these transfers, not only did the demand of the plaintiff exist, but suit therefor had long previously been commenced and had substantially been determined in favor of the plaintiff, the testimony before the referee having been finished a day or two before the conveyances were recorded, and the defense of defendant ruled out. It is also expressly admitted that although the deeds to Bernhard Moral and Jeannette Moral recite a consideration of $1,500, that, in point of fact, no money passed at the time of the conveyance. It is also shown that David Moral purchased the property at a foreclosure sale instituted upon mortgages formerly owned by David Moral on these houses and another; that the mortgages were originally assigned to him, held in his own name for several years, and he collected the interest; that, having purchased the property at the referee's sale, he gave his own checks therefor, took the title in his own name, sold one of the houses in his name, and made the usual covenant of seizin and warranty, in which his wife joined, and conveyed expressly her dower right only; that David Moral, in November, 1875, gave a mortgage, with his wife, to the creditors of Salomon & Moral to secure the settlement then made, in which she expressly referred to this property as being that of her husband. Against this and other proof disclosed in the case, we have the statement that the original consideration for which the mortgages were obtained came from the wife thirty years ago, and that Moral

took them in his name, and also took the deeds in his name without her knowledge and consent. We call the attention of the court to the improbability, in point of fact, of the defendants' story. David Moral and his wife always lived together; he exercised sole control over the mortgages and deeds; gave his own checks, all the moneys being in his own name in the banks; collected the interests and rents; sold one of the houses with his wife's consent and received the moneys and put it in his name, she conveying her dower right; gave a mortgage upon the property to creditors, and especially therein covenanting that she was not the owner, etc. She knew all about this, and David Moral, besides, made a written statement, in which he claimed to own this property, so that, aside from the probability of the story itself, the acts of the parties are all inconsistent either with ownership of the property in Mrs. Moral or ignorance of the fact of David Moral owning the property. The judge was justified in so finding. These conveyances being *prima facie* voluntary, and made by one indebted and insolvent, are presumably fraudulent and void. This we established before we rested the case. A voluntary conveyance is a conveyance without any valuable consideration (*Bump on Fraud. Conv.*, *p.* 279), and the law presumes a fraudulent intent on the part of the grantee of such a conveyance by the mere acceptance of the transfer (*See Bump on Fraud. Con.*, *p.* 280; *Mohawk Bk.* agt. *Atwater*, 2 *Paige*, 54; *Van Wyck* agt. *Seward*, 18 *Wend.*, 375; *see p.* 392 *and onward particularly; Reade* agt. *Livingston*, 4 *Johns. Ch. R.*, 481; *Wood* agt. *Hunt*, 38 *Barb.*, 302). Where a party receives a conveyance of land from an insolvent without actually paying, receiving or becoming bound to pay any consideration therefor, no further proof of knowledge, or notice of the fraudulent intent of the grantee against his creditors is necessary in order to charge the grantee with complicity in the fraud (*Holmes* agt. *Clark*, 48 *Barb.*, 237; *Bennet* agt. *McGuire*, 58 *id.*, 625; *Newman* agt. *Cordell*, 43 *id.*, 448).

Salomon agt. Moral.

The intent to defraud need not be established by direct proof; it may be inferred or presumed from the knowledge of other facts (*Van Wyck* agt. *Seward*, 18 *Wend.*, 375, *especially page* 395). "Men do not often declare their purpose when they are about to do an act injurious to others, and we have no means of arriving at a knowledge of the internal resolve or determination of the actor but by reasoning and drawing inferences from his external conduct. To this kind of presumption we constantly resort, not only in civil but in criminal cases. When a debtor gives away all his property, it is a necessary consequence of the act that the creditor is injured — that he is defrauded. This consequence the debtor intended to produce. He may also have had some other purpose in view, but this intent was part and parcel of the act. If a man, after contracting a legal obligation, makes a voluntary conveyance of all his property, the language of the act is that he intends to put it out of the power to obtain satisfaction if the contract shall be broken (*Case above. cited; Babcock* agt. *Echler*, 24 *N. Y.*, 623; *Newman* agt. *Cordell*, 43 *Barb.*, 456; see *Bump on Fraud. Conv.*, *pp.* 282, 283, *and cases there cited*). A voluntary conveyance is a badge of fraud, for its natural and probable tendency is to delay, hinder and defraud creditors (*See Bump*, 284). It is *prima facie* evidence of an intent to delay, hinder or defraud creditors (*Bump on Fraud. Conv.*, *p.* 285, *and cases cited*). The burden of proof is thrown upon the grantee to establish the circumstances which will repel the presumption of a fraudulent intent. The transfer stands condemned as fraudulent, unless the facts which may give it validity are proved by him (*See the cases cited on pages* 286, 287 *of Bump on Fraud. Conveyances; Dunlap* agt. *Hawkins*, 59 *N. Y.*, 342). To rebut the presumption of fraud, the proof must be clear, full and satisfactory (*See, also, Savage* agt. *Murphy*, 34 *N. Y.*, 508). Such conveyances will be set aside at the suit of a creditor whose claim is even in tort (*Jacobson* agt. *Myers*, 18 *Johns.* 425; *Fox* agt.

*Hill,* 1 *Conn.,* 295; *Howe* agt. *Ward,* 1 *Greenl.,* 195). It therefore follows that upon the pleadings and proof of insolvency, and the judgment and execution, a *prima facie* case is established. The court having found that the conveyances were made with intent to hinder, delay and defraud creditors, and that Mrs. Moral had notice at the time of such intention, she became a party to the fraud and could not obtain a benefit under such fraudulent conveyance. At most, she was only a general creditor having no judgment. This doctrine is universal and established by the following cases: *Bump on Fraudulent Conveyances,* 572, 573; *Riggs* agt. *Murray,* 2 *Johnson,* 565, 582; on appeal, 15 *id.,* 571; *Sands* agt. *Codwise,* 4 *id.,* 536; see pages 585, 596; *Wood* agt. *Hunt,* 38 *Barbour,* 302; *Briggs* agt. *Mitchell,* 60 *id.,* 288; see page 314; *Harris* agt. *Sumner,* 2 *Pickering,* 38; *Bean* agt. *Smith,* 2 *Mason,* 252; *McKee* agt. *Gilchrist,* 3 *Watts,* 230; see page 233; *Cadagan* agt. *Kennett, Cowper,* 434; *Wilson* agt. *Hoar,* 15 *Iowa,* 489; *Price* agt. *Masterson,* 35 *Alabama,* 483; *Foster* agt. *Grigsby,* 1 *Bush,* 86; *Goodwin* agt. *Hammond,* 13 *California,* 168; *Stovall* agt. *Farmers' Bank, High Court of Errors,* 16 *Mississippi,* 305; *Holland* agt. *Crofut,* 20 *Pickering,* 321; *Bleakley's Appeal,* 66 *Pennsylvania,* 187; *Peters* agt. *Smith,* 4 *S. C. Eq.,* 197; *Borland* agt. *Walker,* 7 *Alabama,* 269; *Brooks* agt. *Caughan,* 4 *Head,* 464; *Wiley* agt. *Knight,* 27 *Alabama,* 336; *Williamson* agt. *Goodwyn,* 9 *Grattan,* 506; *Rathbone* agt. *Stevens,* 15 *Connecticut,* 26. The court was warranted by the evidence in making its judgment, and the same should be affirmed with costs.

LARREMORE, *J.* — Although a review of both the law and the facts of a case tried by a judge or referee may be had at general term, yet if no error be shown, the findings of fact like the verdict of a jury should be deemed conclusive. Otherwise, a retrial of the cause would necessarily occur on the argument of the appeal.

Salomon agt. Moral.

The plaintiff, a judgment creditor of the defendant David Moral, brought suit to set aside three deeds of conveyance of premises, situated on the north side of Fifty-first street in the city of New York, on the ground of fraud, and that the same were so made with an intent on the part of Moral to hinder, delay and defraud his creditors. A full statement of the facts is found in the decision of the court below, from which it appears that said deeds were made by Moral (who was then insolvent), without any consideration and with fraudulent intent, of which the grantee Jeannette Moral, the wife of David Moral, had notice. After careful examination of the case, I have reached the conclusion that there is evidence to sustain the judgment. The property was conveyed about a month previous to the entry of plaintiff's judgment, and under circumstances of suspicion. The defendants sought to establish the good faith of the transaction upon the principle of equitable conversion ; that the property in suit though originally conveyed to the husband, was in reality purchased by the property of the wife. Whatever equities may exist between the parties to the deeds are entirely independent of the rights of the plaintiff.

Mrs. Moral, the grantee, had notice (says the court) of her husband's fraudulent intent and this may be inferred from all the circumstances of the case (*Babcock* agt. *Eckler*, 24 *N. Y.*, 623 ; *Bigelow* agt. *Zimmerman*, 7 *Wend.*, 436 ; *Bennett* agt. *McGuire*, 58 *Barb.*, 625).

Even without her privity the conveyance if voluntary would be fraudulent as against creditors (*Mohawk Bank* agt. *Atwater*, 2 *Paige*, 54).

After a review of all the evidence, I am for affirming the judgment.

ROBINSON and C. P. DALY, JJ., concurred.