JOHN W. TRUESDELL, as Administrator, etc., of JOHN FITZGERALD, Deceased, Appellant, *v.* HANNIE L. BOURKE, as Executrix, etc., of WILLIAM J. BOURKE, Deceased, Respondent.

*Fraudulent conveyance to one party for the benefit of another — action to set it aside — when the transferee is not liable.*

In an action instituted under the provisions of chapter 314 of the Laws of 1858, authorizing an administrator of an insolvent estate to treat as void all transfers made by the intestate in fraud of the rights of creditors, and to maintain actions for the recovery of the property so transferred, it appeared that the plaintiff's intestate had been, for sometime previous to his death, insolvent, and while in such condition had given, without any consideration therefor, to one William J. Bourke, the defendant's intestate, $1,000 for the benefit of the Church of St. John the Baptist or the Sacred Heart School.

*Held*, that the plaintiff was entitled to judgment in case Bourke, when the action was begun, had not paid over to the church or school the money thus given him, or in case he had so paid the money with knowledge or notice of the insolvency of the plaintiff's intestate.

In order to establish the fraudulent character of such a transfer of property by an insolvent party it is not necessary to show that the transferee had knowledge or notice of such insolvency.

*It seems*, that the statute of 1858 has made no change in the law, except to confer the right upon the representatives of the party making the fraudulent transfer to recover for the benefit of his creditors the property transferred.

APPEAL by the plaintiff, John W. Truesdell, as administrator, etc., of John Fitzgerald, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 27th day of February, 1896, upon the dismissal of the complaint by direction of the court after a trial at the Onondaga Trial Term, with notice of an intention to

bring up for review upon such appeal an order bearing date the 26th day of February, 1896, dismissing the complaint.

This action was begun March 28, 1885, to recover $1,000, with interest from March, 1882, alleged to have been fraudulently transferred by the plaintiff's intestate to Kate Fitzgerald to defraud his creditors, and by her transferred, with like intent, to William J. Bourke. Plaintiff's intestate died February 28, 1882, hopelessly insolvent. April 15, 1887, William J. Bourke died leaving a last will and testament, which was duly probated, and letters testamentary issued thereon to Hannie L. Bourke, who was substituted as the defendant herein. In January, 1893, a trial was had and a verdict directed for the plaintiff, a judgment entered thereon, which was reversed and a new trial granted, on the ground that there was a question of fact for the jury. (69 Hun, 613.) In 1894 a second trial was had, which resulted in a verdict for $1,000, with interest from May 28, 1885, a judgment was entered thereon, which was affirmed (80 Hun, 55), but was reversed by the Court of Appeals and a new trial granted. (145 N. Y. 612.) The third trial occurred in February, 1896, and, at the close of the plaintiff's evidence, the court dismissed the complaint, and from the judgment entered on the dismissal this appeal is taken.

*William Kennedy*, for the appellant.

*Benjamin Stolz*, for the respondent.

FOLLETT, J. :

This action was begun pursuant to chapter 314 of the Laws of 1858, which provides that an administrator of an insolvent estate may treat as void all transfers made by the intestate in fraud of the rights of creditors, and authorizes the administrator to maintain actions for the recovery of property so transferred. That the estate of John Fitzgerald was largely insolvent, and had been, for some time preceding his death, is an undisputed fact.

It has always been the rule that a creditor of an insolvent decedent might maintain an action to set aside as fraudulent a voluntary conveyance or transfer made in the lifetime of the decedent. (*Frazer* v. *Western*, 1 Barb. Ch. 220 ; affd., How. Ct. App. Cas. 448 ; *Loomis* v. *Tifft*, 16 Barb. 541 ; *Estes* v. *Wilcox*, 67 N. Y. 264.)

The statute above referred to has made no change in the law, except it confers the right upon the representative to recover property fraudulently transferred by his insolvent intestate for the benefit of all the creditors, which right did not exist previous to the statute. William J. Bourke testified in his lifetime that the $1,000 were given him for the benefit of the Church of St. John the Baptist or the Sacred Heart School. The transfer being voluntary, and the intestate insolvent when it was made, and remaining so until his death, it is immaterial whether William J. Bourke knew that the intestate was insolvent or not, provided he had not transferred the money to the church or school without notice and in good faith.

In case a person makes a voluntary conveyance or transfer of his property, and is insolvent at the time, such voluntary conveyance or transfer is fraudulent as against his creditors, even though the transferee was without knowledge or notice that the transferer was insolvent. (*Mohawk Bank* v. *Atwater*, 2 Paige, 54 ; *Smart* v. *Harring*, 52 How. Pr. 505 ; *Salomon* v. *Moral*, 53 id. 342 ; *Emmerich* v. *Hefferan*, 26 J. & S. 217.) If an insolvent debtor makes a voluntary conveyance or transfer of his property, real or personal, and that fact be clearly established, the inference is inevitable that the transfer or conveyance is fraudulent as against creditors. (*Coleman* v. *Burr*, 93 N. Y. 17.) It being undisputed that John Fitzgerald was insolvent at the time when the $1,000 were given to William J. Bourke, it follows, as a matter of law, that as against the creditors of the former the gift or transfer was fraudulent in law and invalid. (See cases above cited, and Wait Fr. Conv. § 208 ; Bump Fr. Conv. 276, and cases cited.) This species of fraud is treated of in works on equity jurisprudence, under the head of constructive fraud and voluntary conveyances and transfers, and the rule of law herein declared has never, so far as I am aware, been questioned.

The important question is, was the evidence given on this trial sufficient to raise a question of fact for the jury, whether William J. Bourke, before he transferred the gift to the church or school, if he ever did, had knowledge or notice that the intestate was insolvent when the gift was made ?

William J. Bourke was a Catholic priest, and pastor of the Church of St. John the Baptist, at Syracuse, N. Y., which maintained a school known as Sacred Heart.

At the death of John Fitzgerald, and for some time before, his money, amounting to more than $3,000, had been kept on deposit with the Trust and Deposit Company of Onondaga in the name of " Kate Fitzgerald," on whose pass book was written " John Fitzgerald may draw." March 14, 1882, fourteen days after the death of John Fitzgerald, Kate Fitzgerald drew the balance of this account, amounting to $3,520.41, and on the same day the State Bank of Syracuse drew a draft on the First National Bank of New York for $1,000, payable to the order of Kate Fitzgerald, which was indorsed by her, to William J. Bourke, and it also bore the following restrictive indorsement: " Pay Union Trust Co. for collection on account. Syracuse Savings Bank." On the same day, March 14, 1882, $1,000 were credited to the account of " Rev. Wm. J. or Hannie L. Bourke " with the Syracuse Savings Bank.

Hannie L. Bourke was a sister of William J. Bourke and is now the executrix of his estate. In 1882 there was an account in the Syracuse Savings Bank kept in the name of " Rev. Wm. J. or Hannie L. Bourke." In the same year the Syracuse Savings Bank held a mortgage on the property of the Church of St. John the Baptist on which William J. Bourke paid, July 8, 1882, $1,000, by a check drawn on the Salt Springs Bank, as testified by Reidel, an employee of the Syracuse Savings Bank, and he also testified that there was no withdrawal on that day from the account of " Rev. Wm. J. or Hannie L. Bourke." This account is in evidence, and there were no withdrawals therefrom during 1882, except two items of $100 each, one item of $150, and another item of $200. So it is apparently established that the $1,000 paid on the mortgage came not from the account into which the $1,000 belonging to the estate of the intestate were traced, but from some other source.

April 11, 1882, John W. Truesdell was appointed administrator of the estate of John Fitzgerald. George K. Collins, an attorney, testified that within a week, he thinks, after Truesdell's appointment the claim against Bourke was placed in his hands, and he wrote him requesting an interview; that Bourke came to his office and he told Bourke that the estate had a claim of $1,000 or $1,100 which he would better pay, as to keep it back would injure him. He told Bourke that he understood that he claimed the sum as a gift, but that it was not good. He testified that Bourke did not

admit that he had received the money, but said it would be time enough to give it up when it was shown that he had it. James Keefe testified that he had a conversation with William J. Bourke about five or six months after the death of John Fitzgerald, which would be in July or August, 1882, in which Bourke said: "He said he had the thousand dollars that came from John Fitzgerald, and he spoke one time that he thought he could secure a judgment from George Porter. That it was a question whether he could keep this money or not, and he understood that George Porter had a judgment that he could secure for nothing as an offset against this thousand dollars."

October 2, 1882, William J. Bourke was examined in the Surrogate's Court of the county of Onondaga and testified: "John Fitzgerald gave me one thousand dollars in charity for a school; he gave it to me about one year ago. I got this money after his death; I got the money through the hands of Kate Fitzgerald; I deposited the money or check in the Syracuse Savings Bank in my own name. It was just one thousand dollars. I had no papers or writing in reference to this money from John Fitzgerald. I knew he left one thousand dollars for me as agent of the church. I asked Kate Fitzgerald for this thousand dollars. She said John Fitzgerald had spoken to her about it and left it with her for me as treasurer of the church, that John Fitzgerald had left for that purpose. * * * I paid this one thousand dollars to the Syracuse Savings Bank on a mortgage the bank held against St. John the Baptist Church, of which I am the pastor."

April 15, 1887, about two years after this action was begun, and before the first trial, William J. Bourke made his last will and testament, which after his death was duly probated. The following is a copy of the 4th clause of his will:

"*Fourth.* There is also deposited in the Syracuse Savings Bank the sum of one thousand dollars which belonged to the Sacred Heart School under the supervision of the Sisters of St. Joseph, unless a judgment is rendered against me or my estate in the action pending in favor of John W. Truesdell, as administrator of the goods, chattels and credits of John Fitzgerald, in which event I direct said money to be applied in satisfaction of said judgment."

The evidence referred to is quite sufficient to raise an issue of

fact for the jury whether William J. Bourke had notice when he paid the money over for the benefit of the church, if he ever did, that the donor was insolvent and that the money was claimed by his administrator.

The rule is elementary that in case an innocent transferee, acting as trustee, of money transferred in fraud of creditors, pays it over before notice of the fraudulent character of the transfer, according to the terms of the transfer, he is not liable; but in case he pays it over according to the terms of the transfer, after notice of the fraudulent character of the transfer, he is liable in an action brought for the benefit of creditors. (Bump Fr. Conv. [2d ed.] chap. 24, and cases cited.)

It should be stated that the evidence contained in this record in respect to notice is quite different from the evidence contained in the record reviewed by the Court of Appeals.

The view taken of this case renders it unnecessary to consider the exceptions taken to the rulings on the admission and rejection of evidence which have been argued.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

In case the jury finds the following propositions the plaintiff will be entitled to recover: (1) That the intestate or his estate was insolvent when the gift was made. (2) That William J. Bourke had not paid over to the church or school the money given him when this action was begun. Or in case the jury finds the first proposition above stated and finds that William J. Bourke paid the money to the church or school before this action was begun, but with knowledge or notice that the intestate's estate was insolvent, then the plaintiff will be entitled to recover.

All concurred.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.